# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD SCOTT KINDRED,<br><br>Plaintiff,<br><br>v.<br><br>CLLIFF ALLENBY, et al.,<br><br>Defendants. | Case No. 1:18-cv-00554-EPG (PC)<br><br><u>SCREENING ORDER</u><br><br>ORDER FOR PLAINTIFF TO:<br><br>(1)  FILE A SECOND AMENDED COMPLAINT;<br><br>   OR<br><br>(2)  NOTIFY THE COURT THAT HE WISHES TO STAND ON HIS COMPLAINT, SUBJECT TO THE COURT ISSUING FINDINGS AND RECOMMENDATIONS TO A DISTRICT JUDGE CONSISTENT WITH THIS ORDER<br><br>(ECF NO. 9)<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff, Richard Scott Kindred, a civil detainee at the Coalinga State Hospital, is proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Before the Court for screening is Plaintiff's First Amended Complaint ("FAC") (ECF No. 9). Plaintiff alleges that his rights under the Fifth and Fourteenth Amendments were violated by Defendants when they failed to provide him access to his property in which his legal documents are located, and searched and seized his personal and religious property. For the reasons discussed below, the Court finds the FAC fails to state any cognizable claims. The

Court will grant Plaintiff leave to file an amended complaint or, alternatively, to notify the Court that he wishes to stand on the FAC, subject to the Court issuing findings and recommendations to a district judge consistent with this order.

## I. BACKGROUND

Plaintiff filed the Complaint commencing this action on April 25, 2018. (ECF No. 1.) On September 7, 2018, he filed a motion to file an addendum to the Complaint. (ECF No. 7.) Because the Complaint was not signed by Plaintiff in violation of Federal Rule of Civil Procedure 11(a), the Court struck the Complaint and allowed Plaintiff to file an amended complaint. (ECF No. 8.) The Court also granted Plaintiff's motion to file an addendum to the original complaint, instructing Plaintiff that the information he sought to include through the addendum must be included in the amended complaint. (*Id.* ("the amended complaint must be complete in itself without reference to the prior or superseded pleading and must include all supplemental claims and allegations" (citing Local Rule 220).) Plaintiff filed his First Amended Complaint ("FAC") on October 3, 2018. (ECF No. 9.)

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding in forma pauperis (ECF No. 4), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## III. ALLEGATIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

The FAC brings claims against the following defendants: Cliff Allenby, assistant director of the California Department of State Hospitals ("DSH"); Brandon Price, executive director of DSH—Coalinga ("DSH-C"); Janice Wallace, hospital administrator at DSH-C; Jack Carter, Chief of Police at DSH-C; Daljit Basran, a unit supervisor, DSH-C; J. Corona, sergeant, DSH-C; Jorge L., psych technician, CDSH-C; and the following officers at DSH-C: A. Silvas, A. Alberto, I. Boofeana, S. Domingquez, Soto, and J. Luna. (ECF No. 9 at 2-3.) Plaintiff brings three separate claims against these defendants: (I) denial of the right of access to courts, (II) illegal search and seizure of personal property; and (III) illegal search, seizure, and mishandling of religious items.

### A. Claim I: Denial of Right of Access to Courts

Plaintiff alleges that the defendants denied him of his right of access to the courts in violation of the Fifth and Fourteenth Amendments. (ECF No. 9 at 3.) He alleges that DSH-C went on lockdown from January 12, 2018, to sometime in February and that Plaintiff was denied access to his property until approximately May 2018. (*Id.* at 3-4.)

In August 2018, Plaintiff requested Patty Robles contact the Department of Police Services ("DPS") to access Plaintiff's "grey bin," which contained Plaintiff's "legal documents

revolving around plaintiff's appeals and writs (both State & Federal), which plaintiff needs to file a Federal Writ with the United States Supreme Court. The legal documents were located in the grey bin because Ms. Robles had refused to allow Plaintiff to keep all of his legal documents in his living area. Plaintiff was informed that there were no grey bins in the Unit's back area." (*Id.* at 4.)

On or about September 9, 2018, Plaintiff informed Isaac Bonsu, the Unit Supervisor, that Plaintiff needed to locate his legal documents, and that these documents were located in Plaintiff's grey bin because Robles refused to allow Plaintiff to keep all of his legal documents in his living area. Bonsu stated that he would locate the grey bin and "that he personally knew that the bin was in the back." (*Id.*)

On or about September 19, 2018, Plaintiff again raised the issue of his legal documents with Bonsu, and specifically asked Bonsu if he (Plaintiff) "was going to have to file with the Courts that he was being denied/delayed access to the court due to that his property bin had been lost by Unit/D.P.S. Staff." (*Id.*) Bonsu assured Plaintiff that filing a case "would not be necessary, that he would have the P.M. Shift Leader contact D.P.S. and again search the area, but again this was fruitless due to the fact that D.P.S. Officer M. Gonzales assured plaintiff that he had gone through every bin and couldn't find one with plaintiff's name." (*Id.*)

On September 22, 2018, Bonsu contacted DPS and arranged for an officer to meet with Bonsu for the purpose of searching the back area himself in an attempt to locate Plaintiff's grey bin. Bonsu was unable to locate the bin. Thus, Plaintiff's grey bin, which contained Plaintiff's legal documents, has been searched for on three occasions and not found even though the grey bin was located in the back room prior to the lockdown and DPS's securing of the room.

Plaintiff then made a property appointment for September 27, 2018, so that he could visit the main property room to see if his grey bin containing his legal documents had been transferred to the main property room. The grey bin was not, however, located there either. (*Id.* at 5.)

In addition to the missing grey bin, Plaintiff's rights were violated by the following: (1) Plaintiff was denied an appointment to access his "chart appointment," which was related to

another civil action Plaintiff has pending against hospital employees; (2) Plaintiff was denied access to scheduled appointments on January 23, 2018, and February 6, 2018, to make legal copies and mail legal documents, and Defendant Basran refused to make arrangements for staff to take documents to the copy center or make needed copies so that Plaintiff could mail them; and (3) from January 13 through February 26, 2018, Plaintiff was denied access to the law library by Basran, and Basran also refused to send her staff to the Law Library to pick up the legal documents needed by Plaintiff.

Plaintiff alleges that, as a result, Plaintiff's present case has been unnecessarily delayed and that he needs access to his medical charts for purposes relating to discovery.

### B. Claim II: Illegal Search and Seizure on January 29, 2018

Plaintiff alleges that Defendants illegally searched and seized his personal property in violation of his rights under the Fifth and Fourteenth Amendments of the U.S. Constitution, and § 7 of the California Constitution. He alleges that on December 22, 2017, Defendant Brandon Price, the executive director of DSH-C, submitted an emergency regulation requesting that the Office of Administrative Law grant Price authority to deem as contraband all electronic devices with the capacity to store data. (ECF No. 9 at 6.) Price's request was granted.

On January 12, 2018, Price issued a memorandum to all DSH-C patients, informing them of the new regulation, under which certain items would now be considered contraband, and providing a list of some of the items that would be covered and items that patients would be allowed to possess. (ECF No. 9, ex. 2.) Price then ordered an Institutional Lockdown, justifying the lockdown through false statements to DSH that patients at DSH-C had begun rioting and assaulting staff.

On January 29, 2018, at approximately 7:00 a.m., DPS and "Off Unit Staff" came onto Plaintiff's unit with the intent of searching each patient's living area and the common areas of the unit. Approximately six hours later, Plaintiff and his peers were allowed to return to their unit and their living areas. "Upon entering plaintiff noted that his living area had been left a shambles." (*Id.* at 7.) "Prior to the search plaintiff had informed both his Unit Staff and the Department of Police Services that he wanted his rights as a Native American to be upheld and

allowed to secure those spiritual and sacred items per Administrative Directive No. 642, which calls for [a] Native American once identified as such be allowed to secure[] his property in a large clear plastic bag and secure it in the Unit Supervisors' Office or other secured location." (*Id.*) Both Defendant Basran and the Search Captain (who refused to give Plaintiff his identification) denied Plaintiff this right. And this was done even though Basran knew Plaintiff was a practicing Native American and even though Plaintiff had shown the Search Captain the "Stop Sign" attached to the door to Plaintiff's living area, which states that there are sacred spiritual items in the room; that special handling is required; and to "Please See Unit Supervisor or a Chaplain Before Searching this Room/Dorm Area. A.D. 642." (ECF No. 9 at Ex. 5.)

After seeing his room was left in shambles, Plaintiff contacted Rick Smith, the a.m. shift lead at the time for Plaintiff's unit, and told Smith that Plaintiff needed to show Smith the condition of Plaintiff's living area. (*Id.* at 7-8.) Smith accompanied Plaintiff to the living area and observed that Plaintiff's altar had been removed from Plaintiff's living area; that Plaintiff's Dream Catcher, which was hung on the wall over the head of the bed, had been pulled from the wall and tossed onto the bed under a pile of papers and other non-spiritual, non-sacred items; that Plaintiff's bed was also completely stripped of all bedding; and that Plaintiff's other property was left in a pile. Plaintiff requested Smith contact the DPS to have pictures taken; when DPS was contacted, the DPS sergeant on duty refused to do so. (*Id.* at 8.)

Plaintiff discovered the following items, which Plaintiff alleges do not fall within the contraband criteria, were also taken: personal electronic razor; personal battery operated alarm clock; two goose down pillows; electronic four (4) port hub; MP-3 players and charging devices; Briteview Media Player, personal television antenna (later returned) and amplifier (not returned), and three 4-packs of AAA batteries and four 4-packs of AA batteries.

### C. Claim III: Illegal Search and Seizure on June 29, 2018

Plaintiff alleges that Defendants illegally searched and seized his religious (spiritual and sacred items) and personal property, as well as mishandled this property in violation of his rights under the Fifth and Fourteenth Amendments of the U.S. Constitution, and § 7 of the

California Constitution. (ECF No. 9 at 10.)

Plaintiff alleges that he was awakened on June 29, 2018, by approximately seven DPS officers and Defendant Sergeant J. Corona, who told Plaintiff that Plaintiff needed to get dressed and get out of his room. When Plaintiff asked why, and if it was because Unit 18, where Plaintiff's room is located, was being searched, Corona responded, "No, just you. Now you need to get [out so] Officers can search you." (*Id.*) Plaintiff asked Corona what they were looking for, and Corona responded, "we're doing a general search of your room, you need to get up and go outside to be searched as well, [and] if you want the privilege of standing by you need to shut your mouth and comply with my order. Now get up and go outside." (*Id.*)

Plaintiff informed Corona that Plaintiff was Native American, and drew her attention to the "Stop" Sign posted on the door to his room, which stated that "Sacred Spiritual Items are kept within this room/dorm. Special Handling is Required. Please see unit supervisor or a chaplain before searching this room/dorm area. A.D. 642." (*Id.* at 10 and Ex. 5.) Plaintiff also drew Corona's attention to a document titled "Native American Sacred and Blessed Items Contained in Mr. Kindreds' Living Area," which is also attached to the door to Plaintiff's room. This document includes a detailed list of spiritual and sacred items contained in his room and is signed by Defendant Daljit Basran, the Unit Supervisor for Unit 18. (*Id.* at 11 and Ex. 8.) The document states that the items "are blessed and/or sacred and are not to be handled in accordance to A.D. 642." (*Id.* at Ex. 8.) Corona instructed two of her officers to get Plaintiff's unit staff to find out whether the Unit Supervisor and Programs had a copy of this list of items. (*Id.* at 10-11.) Unit staff member Psych. Tech Jorge L. came to Plaintiff's room and Corona asked whether the Unit Supervisor and Programs had copies of the list to verify what was on the list. Plaintiff responded that they did, and in response Corona told Plaintiff "to shut up, interfere again and I'll have you removed from the area." (*Id*. at 11.) Plaintiff responded to Corona, stating that Corona and her officers were performing an illegal search in violation of Administrative Directives No. 820 and 642. Corona responded that she knows "what those A.D.s state and I know my job." (*Id.*)

Officers began searching Plaintiff's area. One of the officers started going through

Plaintiff's altar, reached inside the altar and pulled out Plaintiff's Red Tail Hawk Wing Fan. Plaintiff informed this officer that she needed to be careful with the fan and that "it was a sacred item and that she was not supposed to handle it. Corona then began yelling at Plaintiff, telling him that she had warned him" and "now you are leaving the area." (*Id.*) Corona ordered Jorge L. to remove Plaintiff from the area. Plaintiff complied, and left the area, but told Corona that what she (Corona) was doing was wrong.

When Plaintiff was allowed to return to his living area several hours later, he found the area totally torn apart, and it took five days, with the help of Plaintiff's roommates, to put everything back in place and determine what had been taken/was missing. The missing items include black & khaki suspenders; a leather and suede duffel bag; a Cherokee Ribbon Shirt (which is ceremonial clothing that Plaintiff has permission [to possess]); suede leather pants ([which Plaintiff also has permission to possess]); two insulated bags; a large black duffel bag; a spiritual blanket ([which Plaintiff previously was awarded the right to possess]); and a 24" Samsung color television. (ECF No. 9 at 11-12.)

Plaintiff seeks compensatory damages, punitive damages, and injunctive relief.

### IV. ANALYSIS OF PLAINTIFF'S CLAIMS

#### A. Claim I: Denial of Right of Access to Courts

Inmates and detainees have a fundamental constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). However, to state a claim for the denial of court access, a plaintiff must establish that he suffered an actual injury. *Id.* at 349. "[A]ctual injury [is] actual prejudice with respect to contemplated or existing litigation, such as the ability to meet a filing deadline or to present a claim." *Id.* at 348.

Here, Plaintiff alleges that Defendants have been unable to locate Plaintiff's grey bin, which contains his legal papers and medical records and that, as a result, Plaintiff's present case has been unnecessarily delayed, and that he also needs access to his medical charts for purposes relating to discovery. The mere delay of Plaintiff's case is insufficient, by itself, to demonstrate prejudice with respect to contemplated or existing litigation. *See id.* Plaintiff's denial of access to courts claim is accordingly subject to dismissal.

### B. Claims II and III: Illegal Search and Seizure of Personal and Religious Property in Violation of the Fifth and Fourteenth Amendments of the U.S. Constitution, and § 7 of the California

Plaintiff alleges that Defendants' search and seizure of his personal property and religious property on January 29, 2018, and again on June 29, 2018, violated his rights under the Fifth and Fourteenth Amendments of the U.S. Constitution, and § 7 of the California Constitution.

Plaintiff cannot state a cognizable § 1983 claim under the Fifth Amendment for violation of due process because the due process component of the Fifth Amendment applies only to the federal government. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (dismissing Fifth Amendment due process and equal protection claims brought against the City of Los Angeles because "[t]he Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government—not to those of state or local governments"). Plaintiff's Fifth Amendment claims are accordingly subject to dismissal.

Plaintiff also cannot state a cognizable § 1983 claim for violation of due process under the Fourteenth Amendment for the deprivation of Plaintiff's property because California law provides Plaintiff with an adequate post-deprivation remedy.[1] *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available"); *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam) ("California law provides an adequate post-deprivation remedy for any property deprivations." (citing Cal. Gov't Code §§ 810-895)). Plaintiff's Fourteenth Amendment claims are accordingly subject to dismissal.

---

[1] That remedy is provided through California's Government Claims Act, Cal. Gov't Code § 810 *et seq.* Under the Government Claims Act, prior to filing an action against a state entity or its employees seeking money or damages, a plaintiff must timely file a notice of the claim with the appropriate agency. *See, e.g,* Cal. Gov't Code § 905.2 (providing that claims for money or damages against the state are to be filed with the Department of General Services except as otherwise provided); Cal. Gov't Code § 910 (specifying information that must be included in a notice of claim); Cal. Gov't Code § 911.2 (setting forth time within which a claim must be presented).

Absent a cognizable federal claim, the Court will not exercise supplemental jurisdiction over Plaintiff's claim that the search and seizure of his personal property and religious property violated his rights under § 7 of the California Constitution. 28 U.S.C. § 1367(c)(3); *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001); *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001); *Les Shockley Racing v. National Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir.1989) ("When . . . the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice."). Accordingly, Plaintiffs' state law claims are subject to dismissal.

## V. GUIDANCE ON POTENTIAL CLAIMS

Although Plaintiff does not bring claims claiming violations of the following constitutional and federal law provisions, some of his allegations indicate that he may be seeking to bring such claims. Because the Court is granting Plaintiff leave to file an amended complaint, the Court provides the following additional guidance to Plaintiff.

### A. Fourth Amendment Claim for Unreasonable Search and Seizure

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." U.S. Const. amend. IV. The Fourth Amendment prohibition against unreasonable search and seizure extends to incarcerated prisoners and civil detainees. *Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997) (prisoners); *Hydrick v. Hunter*, 500 F.3d 978, 993 (9th Cir. 2007), *judgment vacated on other grounds*, 556 U.S. 1256 (2009) (civil detainees). However, "'the reasonableness of a particular search [or seizure] is determined by reference to the [detention] context." *Hydrick*, 500 F.3d at 993 (alterations in original) (citation omitted).

For the Fourth Amendment to apply, there must be a reasonable expectation of privacy in the place that is invaded. *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 533 (9th Cir. 2010). "The contours of an involuntarily confined civil detainee's right to privacy in his room in a secure treatment facility are unclear, but assuming Plaintiff retains any reasonable expectation of privacy at all in his living area at Coalinga State Hospital, it would necessarily

be of a diminished scope given Plaintiff's civil confinement." *Warrior v. Santiago*, 2018 WL 827616, at *4 (E.D. Cal. Feb. 12, 2018) (collecting cases). Although Plaintiff is not a convicted criminal, "he is involuntarily serving a civil commitment term at a secure facility; he is not a free individual with a full panoply of rights." *Ryan v. Siqueiros*, 2016 WL 2898450, at *2 (E.D. Cal. May 18, 2016).

### B. First Amendment Right to Free Exercise of Religion

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend I. The United States Court of Appeals for the Ninth Circuit summarizes the application of the Free Exercise Clause in a state prison context as follows:

> The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, prohibits government from making a law prohibiting the free exercise [of religion]. The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration.

*Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).

To state a claim for violation of the Free Exercise Clause, a civil detainee "must allege facts plausibly showing that the government denied [him] 'a reasonable opportunity of pursuing [his] faith comparable to the opportunity afforded fellow [detainees] who adhere to conventional religious precepts.'" *Id.* (alteration in original) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see also Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in *Malik* determines whether the Free Exercise Clause applies). If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith. *Shakur*, 514 F.3d at 884-85.

Government action substantially burdens the exercise of religion when the action is

"oppressive to a significantly great extent." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (citation and internal quotation marks omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.* (quoting *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citation and internal quotation marks omitted).

C. **The Religious Land Use and Institutionalized Persons Act of 2000**

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a).

To state a claim under the RLUIPA, a plaintiff must allege facts demonstrating that the defendant substantially burdened the exercise of his religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005). In any RLUIPA claim, a court must first identify the religious exercise that was allegedly impinged upon, and then determine whether the prison regulation or action at issue "substantially burdens" that religious exercise. *Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir. 2008).

"RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'" *Hartmann*, 707 F.3d at 1124-25 (citing *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in *Emp't Div. Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878-82 [] (1990)." *Int'l Church of*

*Foursquare Gospel*, 673 F.3d at 1067 (citation omitted). "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hartmann*, 707 F.3d at 1124–25 (citing *Warsoldier*, 418 F.3d at 995).

## VI. CONCLUSION

The Court has screened Plaintiff's First Amended Complaint and finds that it fails to state any cognizable claims.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Accordingly, the Court will provide Plaintiff with time to file an amended complaint, so that Plaintiff can provide additional factual allegations. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file a second amended complaint within thirty days.

If Plaintiff chooses to amend his complaint, in his amended complaint he must state what each named defendant did that led to the deprivation of his constitutional or other federal rights. Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes his prior complaint(s), *Lacey v. Maricopa County*, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superseded pleadings, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Plaintiff has a choice on how to proceed. Plaintiff may file an amended complaint if he

believes that additional true factual allegations would state cognizable claim(s). If Plaintiff files an amended complaint, the Court will screen that complaint in due course. Alternatively, Plaintiff may choose to stand on his complaint subject to the Court issuing findings and recommendations to a district judge consistent with this order.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form and a 28 U.S.C. § 2254 Form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
    a. File a Second Amended Complaint, if Plaintiff believes that additional allegations would state cognizable claim(s) under the legal standards explained above; or
    b. Notify the Court in writing that he wants to stand on this complaint, in which case the Court will issue findings and recommendations consistent with this order to a district judge;
3. If Plaintiff chooses to file an amended complaint, Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:18-cv-00554-EPG; and
4. **Failure to comply with this order may result in the dismissal of this action**.

IT IS SO ORDERED.

Dated: **November 8, 2018**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE