**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD SCOTT KINDRED,<br><br>Plaintiff,<br><br>v.<br><br>CLIFF ALLENBY, et al.,<br><br>Defendants. | Case No. 1:18-cv-00554-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S FOURTH AMENDMENT SEARCH AND SEIZURE CLAIMS AGAINST DEFENDANTS BRANDON PRICE, J. CORONA, JORGE LOPEZ; AND JOHN/JANE DOES 1-5; FIRST AMENDMENT FREE EXERCISE CLAIM AGAINST DEFENDANTS J. CORONA AND JORGE LOPEZ; AND FIRST AMENDMENT ACCESS TO COURTS CLAIM AGAINST JOHN/JANE DOES 6-10; AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED WITH PREJUDICE<br><br>(ECF NO. 16)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Plaintiff, Richard Scott Kindred, a civil detainee at the Coalinga State Hospital ("CSH"), is proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Before the Court for screening is Plaintiff's Third Amended Complaint ("TAC"). (ECF No. 16.) Plaintiff alleges that his constitutional rights were violated by

- 1 -

1 Defendants when they searched and seized his personal and religious property, and when they
2 failed to provide him access to his legal documents.
3     For the reasons discussed below, the Court finds that the TAC states cognizable claims
4 against Defendants Brandon Price, J. Corona, Jorge Lopez, and John/Jane Does 1-5 for
5 violation of Plaintiff's Fourth Amendment right against unreasonable search and seizure;
6 against Defendants J. Corona and Jorge Lopez for violation of Plaintiff's First Amendment
7 right to freely exercise his religion; and against John/Jane Does 6-10 for violation of Plaintiff's
8 First Amendment right to access the courts. The TAC does not state any other cognizable
9 claim against any other defendant.
10     Plaintiff may file objections to these findings and recommendations within 21 days
11 from the date of service of this order.

**I. BACKGROUND**

Plaintiff filed the Complaint commencing this action on April 25, 2018. (ECF No. 1.) On September 7, 2018, he filed a motion to file an addendum to the Complaint. (ECF No. 7.) Because the Complaint was not signed by Plaintiff in violation of Federal Rule of Civil Procedure 11(a), the Court struck the Complaint and allowed Plaintiff to file an amended complaint. (ECF No. 8.) The Court also granted Plaintiff's motion to file an addendum to the Complaint, instructing Plaintiff that the information he sought to include through the addendum must be included in the amended complaint. (*Id.*)

On October 3, 2018, Plaintiff filed his First Amended Complaint ("FAC"). (ECF No. 9.) The Court screened the FAC and found that it failed to state any cognizable claim. The Court gave Plaintiff the opportunity to either (1) filed a second amended complaint, or (2) notify the Court that Plaintiff wished to stand on the FAC. (ECF No. 10.) On December 3, 2018, Plaintiff filed his Second Amended Complaint ("SAC"). The Court screened the SAC and found that it stated a cognizable claim against Defendant J. Corona for violation of Plaintiff's First Amendment right to freely exercise his religion, but that the SAC did not state any other cognizable claim against any other defendant. (ECF No. 15.) The Court gave Plaintiff the opportunity to either (1) notify the Court that he is willing to proceed only on the First

Amendment claim against Defendant J. Corona, (2) file a third amended complaint, or (3) notify the Court that he wishes to stand on the SAC subject to the Court issuing findings and recommendations consistent with the screening order. (*Id.*) Plaintiff chose to file a Third Amended Complaint (ECF No. 16), which is before the Court for screening.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by civil detainees seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the detainee has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

### III. ALLEGATIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT

The TAC brings claims for seizure of personal property in violation of the Fourth Amendment; seizure of religious items in violation of the First Amendment; denial of due process in violation of the Fourteenth Amendment;[1] and denial of the right of access to courts in violation of the First Amendment. Plaintiff names as defendants Brandon Price, Executive Director of California Department of State Hospitals-Coalinga ("DSH-C"); J. Corona, Sergeant of the Department of Police Services, DSH-C; Jorge Lopez, psych tech at DSH-C; and John/Jane Does 1-10.[2] (ECF No. 16 at 1-3.)

#### A. Claim I: Violation of Fourth and Fourteenth Amendment Rights—January/February 2018 Seizure of Property

Plaintiff alleges that his Fourth Amendment right to be free from unreasonable search and seizure, and his rights under the Fourteenth Amendment were violated when his personal items were taken during a search of his living area in January and/or February 2018, and subsequently destroyed without providing Plaintiff with compensation. (ECF No. 16 at 4, 10.)

On December 22, 2017, Defendant Brandon Price submitted an emergency regulation requesting that the Office of Administrative Law grant Price authority to deem as contraband certain electronic devices. (ECF No. 16 at 4.) Price's request was granted. (*Id.*) As a direct result of the emergency regulation, Price ordered an Institutional Lockdown between January

---

[1] Plaintiff also brings a Fifth Amendment due process claim. However, the Fourteenth Amendment, rather than the Fifth Amendment, secures Plaintiff's right to due process as against state officials. *See Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States."). Because Plaintiff brings this action only against state officials, and does not name any federal officials, he has not stated a due process claim under the Fifth Amendment.

[2] Although the TAC does not specifically list Doe defendants, the Court infers that Plaintiff intended to include Doe defendants as to his Fourth Amendment claim related to the January/February seizure and his First Amendment denial of access to the courts claim.

- 4 -

12, 2018, and February 20, 2018, and began a unit to unit search "allowing his underlings to take whatever they wanted whether it met the criteria or not and then later refused to return said items and offered no compensation for the property taken." (ECF No. 16 at 5.) Plaintiff had the following property taken from his living quarters: electric razor, battery-operated alarm clock, goose down pillows, four port hub, two MP-3 players; and a Briteview media player. (*Id.* at 5.) This property has not been returned and has now been destroyed without any compensation to Plaintiff. (*Id.* at 10.)

### B. <u>Claim II: Violation of First, Fourth, and Fourteenth Amendment Rights— May 2018 Seizure of Religious and Non-Religious Property</u>

Plaintiff alleges that his Fourth Amendment right to be free from unreasonable search and seizure, his First Amendment right to free exercise of religion, and his Fourteenth Amendment due process rights were violated when his religious and non-religious personal items were taken during a search of his living area. Plaintiff alleges that on May 29, 2018, at approximately 7:00 in the morning,

> Plaintiff was awoken by Def. Sgt. J. Corona who order him to get out of bed that he had to leave. Plaintiff responded by asking if they were doing a Unit Search. Def. Sgt. J. Corona replied that they were doing a general search of plaintiffs' area, [and] he would be searched as well. Plaintiff replied that there was no such thing as a general search, [to] which Def. Sgt. J. Corona [responded] by stating "If you want the privilege of standing by you need to shut your mouth and comply with my order, now get up and go outside." Plaintiff complied, but informed Def. Sgt. J. Corona that she was performing an illegal search[,] that he was Native American and his spiritual and sacred items needed to be secured before they began a search of his living area and property. Def. Sgt. J. Corona then stated, "Don't tell me my job, I know what the Administrative Directives state." Def. Sgt. J. Corona the[n] directed on[e] of her officers to go and get one of the Unit Staff, [and] the officer returned with Defendant Jorge Lopez. Def. Sgt. J. Corona then requested of Def. Jorge Lopez whether or not there was anything to prove that plaintiff was Native American. Def. J. Lopez just shrugged and didn't state anything. Plaintiff intervened at this time and stated, "My Native American Stop Sign is on the door with a list of my sacred and spiritual items that are in my living area." Def. Sgt. J. Corona again stated, "I already told you to shut your mouth, one more interference from you and you will be escorted from the area." One of the female officers started searching around plaintiff's altar and opened the bottom drawer where plaintiff keeps his sacred Red Tail Hawk Fan. She began to grab it and plaintiff started to warn her that she was not to handle it, that he would get it out and show it to her, but before he could finish his statement Def. Sgt. J. Corona began yelling and stated, "That's it, I told you not to interfer[e]." She looked at Def. J. Lopez who directed Kindred to leave stating, "I'll come back and watch them search your area."

(ECF No. 16 at 6-7 (citations omitted).)

When Plaintiff was allowed to return to his living area, "he discovered that numerous items were missing both religious and non-religious that are not on any contraband list." (*Id.* at 7.) The missing items include the following: a ceremonial ribbon shirt, ceremonial deer skin trousers, a spiritual blanket, a large black duffel bag, a small leather/suede duffel bag, a 24" Samsung television, and rechargeable batteries. (*Id.*)

### C. Claim III: Violation of First Amendment Rights—Loss of Gray Bin with Legal Paperwork

Plaintiff alleges that his First Amendment access to the courts and Fourteenth Amendment due process rights were violated because undesignated defendants were unable to locate/lost a gray bin that contained Plaintiff's legal paperwork, causing Plaintiff to miss a deadline for filing a petition with the U.S. Supreme Court.

"Plaintiff filed a writ of preliminary injunction on March 21st 2018 and received their reply on June 20th 2018."[3] (ECF No. 16 at 8.) Because Coalinga staff had continuously harassed Plaintiff about the amount of paperwork he keeps in his living area, Plaintiff agreed to place his legal documents in a secured gray bin that was to be kept on the unit for easy access. (ECF No. 16 at 8.)

> In addition he received additional re-hearing response on July 12th, 2018, which he also placed inside the [a]foremementioned gray bin. However, when plaintiff prepared the appeal to the Supreme Court of the United States in September he discovered that the Gray Bin was missing from Unit Property Room. The Hospital Unit 18 Staff and The Department of Police Services Officers who were the only ones with the access key, had no idea where the gray bin was and plaintiff was forced to contact the United States Court of Appeals for copies of the documents. However, by the time that these were sent to plaintiff he was not able to file it before the 19th of October 2018, it was too late and the Supreme Court of the United States Clerk stated that plaintiff had failed to meet the deadline for filing.

---

[3] The underlying case at issue is *Kindred v. Bigot*, Case No. 1:14-cv-01652-AWI-JDP (E.D. Cal.). In that case, which is still ongoing, Plaintiff filed motions seeking preliminary injunctive relief on December 19, 2016, and April 28, 2017. Plaintiff's motions were denied by the district court on September 18, 2017. Plaintiff filed a notice of appeal from that denial on December 4, 2017, and the Ninth Circuit affirmed the district court's denial of preliminary injunctive relief on June 20, 2018, with the mandate issuing on July 12, 2018. (*See id.* at ECF Nos. 18, 34, 41, 44, 94, 100.)

> Plaintiff attempted to call and speak with Jacob Levitan or Scott S. Harris the Clerks of the Court and explain the situation, but they stated there was nothing that could be done.

(ECF No. 16 at 8-9.)

## IV. SECTION 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006*); see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally

participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

## V. ANALYSIS OF PLAINTIFF'S CLAIMS

### A. Violation of Fourth Amendment Rights (Claims I and II)

Plaintiff alleges that his property was wrongfully seized in violation of his Fourth Amendment rights.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." U.S. Const. amend. IV. This prohibition against unreasonable search and seizure

extends to incarcerated prisoners and civil detainees. *Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997) (prisoners); *Hydrick v. Hunter*, 500 F.3d 978, 993 (9th Cir. 2007) (civil detainees), *judgment vacated on other grounds*, 556 U.S. 1256 (2009). However, "'the reasonableness of a particular search [or seizure] is determined by reference to the [detention] [sic] context." *Hydrick*, 500 F.3d at 993 (alterations in original) (quoting *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir.1988)).

For the Fourth Amendment to apply, there must be a reasonable expectation of privacy in the place that is invaded. *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 533 (9th Cir. 2010). "The contours of an involuntarily confined civil detainee's right to privacy in his room in a secure treatment facility are unclear, but assuming Plaintiff retains any reasonable expectation of privacy at all in his living area at Coalinga State Hospital, it would necessarily be of a diminished scope given Plaintiff's civil confinement." *Warrior v. Santiago*, 2018 WL 827616, at *4 (E.D. Cal. Feb. 12, 2018) (collecting cases). Although Plaintiff is not incarcerated as a convicted criminal, "he is involuntarily serving a civil commitment term at a secure facility; he is not a free individual with a full panoply of rights." *Ryan v. Siqueiros*, 2016 WL 2898450, at *2 (E.D. Cal. May 18, 2016). Further, although civil detainees are entitled to more considerate treatment and conditions of confinement than prisoners, *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982), maintaining facility security and effectively managing the institution are unquestionably legitimate, non-punitive government interests, *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).

Here, Plaintiff alleges that two different seizures occurred. The first seizure occurred sometime between January 12, 2018, and February 20, 2018 ("January/February 2018 Seizure"). The second seizure occurred in May 2018.

### 1. January/February 2018 Seizure

The January/February 2018 seizure occurred during a search of Plaintiff's unit for items that fall within the definition of contraband under a new electronic device regulation. This regulation, California Code of Regulations § 4350, defines prohibited electronic devices as follows:

> (1) Electronic devices with the capability to connect to a wired (for example, Ethernet, Plain Old Telephone Service (POTS), Fiber Optic) and/or a wireless (for example, Bluetooth, Cellular, Wi-Fi [802.11a/b/g/n], WiMAX) communications network to send and/or receive information including, but not limited to, the following:
> > (A) Desktop computers; laptop computers; tablets, single-board computers or motherboards such as "Raspberry Pi;" cellular or satellite phones; personal digital assistant (PDA's); graphing calculators; and satellite, shortwave, CB and GPS radios.
> > (B) Devices without native capabilities that can be modified for network communication. The modification may or may not be supported by the product vendor and may be a hardware and/or software configuration change.
> (2) Digital media recording devices, including but not limited to CD, DVD, Blu-Ray burners.
> (3) Voice or visual recording devices in any format.
> (4) Items capable of patient-accessible memory storage, including but not limited to:
> > (A) Any device capable of patient-accessible digital memory or remote memory access.
> > (B) Recordable disks, including but not limited to CDs, DVDs, Blu-Ray, and CD-ROM.
> > (C) Universal Serial Bus (USB) devices, also known as flash drives or thumb drives.
> > (D) Hard drives, subscriber identity module (SIM) cards, secure digital (SD) drives or cards, micro-secure digital drives or cards (MicroSD), compact flash drives, secure digital high capacity (SDHC), secure digital extended capacity (SHXC), and other similar insertable memory devices.
> > (E) Gaming devices with patient-accessible digital memory storage ability, the ability to access the internet, or the ability to play games or other media or access data not specifically designed for the device, or only able to be played on that particular gaming device, as provided by an approved third-party vendor.
> > (F) Floppy disks, hard disks, and vertical helical scan or video home system (VHS) cassettes.

9 Cal. Code Regs. § 4350(a).

Plaintiff alleges that the following items were seized even though the items do not fall within § 4350(a)'s definition of prohibited items: an electric razor, a battery-operated alarm clock, goose down pillows, four port hub, MP-3 players, and a Briteview Media Player.

The Court finds that the four port hub, MP-3 players, and media player potentially fall within the definition of contraband under § 4350(a). *See* 9 Cal. Code Regs. § 4350(a) (defining electronic devices as including items capable of connecting to a wired and/or wireless communication network; items "without native capabilities that can be modified for network communication"; items capable of memory storage; and recording devices). Accordingly, the initial seizure of these items was reasonable and cannot support a cognizable claim for relief under § 1983.

On the other hand, the electric razor, battery-operated alarm clock, and down pillows do not appear to fall within the definition of contraband under § 4350(a). Construed liberally, and in the context of a detainee, the allegations of the TAC state a claim that the initial seizure of these three items was unreasonable and that the seizure did not serve a legitimate penological interest. The TAC accordingly states a cognizable claim for relief under § 1983 based on the seizure of these items.

As to the defendants against whom this claim is brought, the TAC does not include any factual allegations indicating who was involved in the actual seizure of these items. Instead, the TAC brings this claim against Defendant Brandon Price, the Executive Director of DSH-C. Plaintiff alleges Defendant Price "placed the entire institution on lock down between January 12th and February 20th, 2018 and began a unit to unit search allowing his underlings to take whatever they wanted whether it met the criteria or not and then later refused to return said items and offered no compensation for the property taken." (ECF No. 16 at 4-5.) Construed liberally, Plaintiff's allegations indicate that Price was aware that officers were seizing items that did not fall within the definition of contraband and failed to act to stop or prevent such seizures from occurring. The allegations are sufficient to state a cognizable claim against Defendant Price for violation of Plaintiff's Fourth Amendment rights in relation to the seizure of the electric razor, battery-operated alarm clock, and down pillows. *See Hansen*, 885 F.2d a6 646 (plaintiff can state a claim for supervisory liability by alleging facts that demonstrate that the supervisory defendant knew of the constitutional violations and failed to act to prevent them).

Further, although Plaintiff does not specifically name "Doe" defendants, the Court liberally construes Plaintiff's allegations and finds that Plaintiff has also stated a cognizable claim against the unknown "Doe" defendants who were involved in the actual seizure of Plaintiff's electric razor, battery-operated alarm clock, and down pillows. Plaintiff will be provided with an opportunity to learn the identity of the "Doe" defendants during the discovery process.

\\\

### 2. May 2018 Seizure

The May 2018 seizure occurred during a general search of Plaintiff's living area. During the search, the following religious and non-religious items were taken: a ceremonial ribbon shirt, ceremonial deer skin trousers, a spiritual blanket, a large black duffel bag, a small leather/suede duffel bag, rechargeable batteries, and a 24" Samsung television.

The ceremonial ribbon shirt, ceremonial deer skin trousers, spiritual blanket, large black duffel bag, small leather/suede duffel bag, and rechargeable batteries do not fall within the definition of contraband under § 4350(a). As to the 24" Samsung television, it is unclear whether this particular television would fall within the definition of contraband under § 4350(a). For purposes of screening, and in light of the seizure of the other items that do not fall within the § 4350(a) definition of contraband, the Court will assume that the television also does not fall within that definition.

Construed liberally, and in the context of a detainee, the TAC states a claim that the initial seizure of the ceremonial deer skin trousers, spiritual blanket, large black duffel bag, small leather/suede duffel bag, rechargeable batteries, and 24" Samsung television was unreasonable and did not serve a legitimate penological interest. The TAC accordingly states a cognizable claim for relief under § 1983 based on the seizure of these items.

The TAC brings this claim against Defendants J. Corona and Jorge Lopez. The TAC alleges that Defendant Corona was in charge of and directed the search. The TAC also alleges that Defendant Lopez told Plaintiff that he would watch as the search was being conducted, presumably to assure Plaintiff that his spiritual items would be safe. It can be inferred from the allegations that Lopez watched while Defendant Corona and others conducted the search of Plaintiff's living area and failed to prevent the seizure of Plaintiff's property.

The Court finds the TAC, construed liberally, sufficiently states a claim against Defendants Corona and Lopez for violation of Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure in relation to the seizure of the ceremonial ribbon shirt, ceremonial deer skin trousers, spiritual blanket, large black duffel bag, small leather/suede duffel bag, rechargeable batteries, and television.

**B. Violation of Fourteenth Amendment Due Process Rights (Claims I and II)**

Plaintiff claims that his due process rights were violated because the items that were seized in January/February 2018 and May 2018 were never returned to him and he has not been provided any compensation for the seized items.

"Because Plaintiff claims a deprivation of a property interest, he is entitled to a meaningful hearing at a meaningful time," and the issue is "whether the state is required to provide such a hearing before or after the alleged deprivation." *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985).

Where the deprivation of property "is the result of random, unauthorized and negligent [or intentional] conduct by state officials, and where it is impracticable or impossible for the state to provide preventative process because the state cannot have foreseen the potential deprivation," the "state may satisfy the constitutional requirements for a hearing through process provided as a remedy after a deprivation has occurred, in lieu of preventative process." *Id.* (citing *Paratt v. Taylor*, 451 U.S. 527, 534-35, 540-41 (1981)); *see Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (discussing intentional deprivation). Further, "a state actor's random and unauthorized deprivation of that [property] interest cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy." *Albright v. Oliver*, 510 U.S. 266, 284 (1994) (citations omitted).

On the other hand, "where the deprivation is not random or where it [was authorized and it] would have been practicable for the state to provide process before the fact," the state must provide pre-deprivation process; post-deprivation process is insufficient. *Piatt*, 773 F.2d at 1036 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433-36 (1982)). In the context of a new regulation that imposes a system-wide ban on a defined type of property with no exceptions, the only process due to inmates is notification of the regulation change and an adequate opportunity to comply with it. *Nevada Dept. of Corrections v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) ("Here, prison officials enacted a system-wide ban [on typewriters] with no exceptions. While Downs was not offered an individual pre-deprivation hearing, he was notified of the change in the regulation and given an adequate opportunity to comply with it.

With respect to the personal property of prisoners, that is all the process that is due.").

Here, Plaintiff alleges that Defendants seized his property in violation of a new regulation that prohibited defined types of electronic devices. It would have been impossible for the state to provide a pre-deprivation hearing for these allegedly unauthorized seizures of Plaintiff's property. Accordingly, Plaintiff is entitled only to an adequate post-deprivation remedy. *See Piatt*, 773 F.2d at 1036. California law provides Plaintiff with that adequate post-deprivation remedy.[4] *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir, 1994) (per curiam) ("California law provides an adequate post-deprivation remedy for any property deprivations."). Accordingly, Plaintiff cannot state a cognizable claim under § 1983 based on the continued deprivation of the seized property. *See Hudson*, 468 U.S. at 533 (unauthorized intentional deprivation of property by state employee does not state a constitutional violation where a meaningful post-deprivation remedy for the loss is available).

To the extent Plaintiff is alleging the initial seizures of his property were "authorized" because Defendant Price knew of and allowed the seizures to occur, the claim is subject to dismissal because Defendants are entitled to qualified immunity for the continuing deprivation. *See Jessop v. City of Fresno*, 918 F.3d 1031, 1035-36 (9th Cir. 2019) (granting qualified immunity to officers who initially seized $250,000 worth of property under a lawful search warrant, returned only $50,000, and stole the remaining $200,000); *see also Greene*, 648 F.3d at 1019 (where new regulation imposes a system-wide ban on a defined type of property with no exceptions, the only process due to inmates is notification of the change in regulation and an adequate opportunity to comply with it).

Finally, to the extent Plaintiff claims he is entitled to compensation for the "taking" of his property, the claim fails because the continued deprivation of his property is not for a

---

[4] That remedy is provided through California's Government Claims Act, Cal. Gov't Code § 810 *et seq.* Under the Government Claims Act, prior to filing an action against a state entity or its employees seeking money or damages, a plaintiff must timely file a notice of the claim with the appropriate agency. *See, e.g.,* Cal. Gov't Code § 905.2 (providing that claims for money or damages against the state are to be filed with the Department of General Services except as otherwise provided); Cal. Gov't Code § 910 (specifying information that must be included in a notice of claim); Cal. Gov't Code § 911.2 (setting forth time within which a claim must be presented).

"public use." *See AmeriSource Corp v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008) ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause.").

### C. **Violation of First Amendment Right to Freely Exercise Religion (Claim II)**

The Court interprets the TAC as alleging that Defendants J. Corona and Jorge Lopez violated Plaintiff's rights under the First Amendment to freely exercise his religion when they seized Plaintiff's religious property during a search of Plaintiff's living area in May 2018.

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend I. The Ninth Circuit summarizes the application of the Free Exercise Clause in a state prison context as follows:

> The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, prohibits government from making a law prohibiting the free exercise [of religion]. The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration.

*Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).

To state a claim for violation of the Free Exercise Clause, a civil detainee "must allege facts plausibly showing that the government denied [him] 'a reasonable opportunity of pursuing [his] faith comparable to the opportunity afforded fellow [detainees] who adhere to conventional religious precepts.'" *Id.* (alteration in original) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). To implicate the Free Exercise Clause, a detainee must show that the belief at issue is both "sincerely held" and "rooted in religious belief." *See Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see also Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in *Malik* determines whether the Free Exercise Clause applies). If the detainee makes his initial showing of a sincerely held religious belief, he must establish that the Defendants substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith. *Shakur*, 514 F.3d at 884-85.

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (citation and internal quotation marks omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.* (quoting *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citation and internal quotation marks omitted).

Here, the allegations of the TAC and exhibits attached thereto indicate that Plaintiff is a Native American and is allowed to keep certain spiritual items in his living area. During a general search of Plaintiff's living area in May 2018, some of Plaintiff's personal property was seized. Of the items seized, the following appear to be claimed as spiritual items: ceremonial ribbon shirt, ceremonial deer skin trousers, a spiritual blanket, and a black duffel bag that holds the spiritual blanket.

Plaintiff has included as an exhibit to his complaint a sign and inventory of spiritual items that he alleges was posted on the door of his living area. This sign states:

NOTICE TO STAFF

SACRED SPIRITUAL ITEMS
ARE KEPT WITHIN THIS ROOM/DORM
SPECIAL HANDLING REQUIRED.

PLEASE SEE UNIT SUPERVISOR OR
A CHAPLAIN BEFOE SEARCHING
THIS ROOM/DORM AREA

A.D. 642

(ECF No. 16 at 109.) The inventory is titled "Native American Sacred and Blessed Items Contained in Mr. Kindred's Living Area." This inventory is signed by both Plaintiff and a "Ms. Daljit Baran," who is listed as "Unit Supervisor, Unit 18." (*Id*. at 110-11.) The inventory includes the following seized items: spiritual blanket and black tote (which the Court assumes is the black duffel bag that was seized during the search). (*See id*.) The allegations and

attachments to the TAC indicate that these items have been recognized by CSH as sacred spiritual items. Further, the allegations of the TAC, liberally construed, indicate that Plaintiff considers the ceremonial ribbon shirt and ceremonial deer skin trousers, although not included on the inventory list, to be spiritual items necessary for the practice of Plaintiff's spiritual beliefs.

The TAC also alleges facts demonstrating that Defendant Corona was in charge of and directed the search, and that Defendant Lopez watched as the search was being conducted, after assuring Plaintiff he would do so. The Court finds that the TAC, construed liberally, sufficiently states a claim against Defendants Corona and Lopez for violation of Plaintiff's First Amendment right to freely exercise his religion based on the seizure of Plaintiff's spiritual property of a ceremonial ribbon shirt, ceremonial deer skin trousers, a spiritual blanket, and the black duffel bag that holds the spiritual blanket.

### D. First Amendment Denial of Right of Access to the Courts (Claim III)

Plaintiff claims that he was denied his right of access to the courts because Defendants could not locate the gray bin in which Plaintiff's legal documents were stored, causing Plaintiff to miss the deadline for filing a petition for writ of certiorari with the U.S. Supreme Court.

Inmates and detainees have a fundamental constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). To state a claim for denial of access to courts, a plaintiff must show: (1) the loss of a nonfrivolous underlying claim, i.e., an "actual injury"; (2) official conduct frustrating the litigation of that claim; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *See Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002) ("The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief. . . . The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future.").

Here, Plaintiff alleges he was actually injured because his petition for writ of certiorari

with the U.S. Supreme Court, through which he sought review of a decision of the Ninth Circuit in his ongoing civil rights conditions of confinement case,[5] was rejected as untimely. In support of this claim, Plaintiff has attached a copy of the Ninth Circuit's decision affirming a district court's denial of Plaintiff's requests for preliminary injunctive relief, and a letter from the Office of the Clerk of the U.S. Supreme Court affirming the rejection of Plaintiff's petition for writ of certiorari as untimely. (ECF No. 16 at 187-89, 192.)

The Court finds Plaintiff's allegations sufficient to state a claim for denial of the right of access to courts in relation to the loss of his gray bin and resulting untimeliness of his petition for writ of certiorari. *See Lewis*, 518 U.S. at 348-49, 354-55 (access-to-courts claim requires showing of actual injury, which means prejudice to direct appeals of criminal convictions, habeas petitions, or challenges to conditions of confinement).

Plaintiff has not, however, alleged which Defendant engaged in what specific conduct that resulted in the loss of the gray bin and the resulting alleged denial of Plaintiff's right of access to the courts, presumably because Plaintiff does not know the identity of the responsible individual(s). The Court will allow this claim to go forward against the unknown "Doe" defendant(s) involved in the loss of Plaintiff's gray bin. Plaintiff will be provided with an opportunity to learn the identity of the "Doe" defendant(s) during the discovery process.

## VI. CONCLUSION AND RECOMMENDATIONS

The Court has screened Plaintiff's Third Amended Complaint and recommends finding that it states a cognizable claim for violation of Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure against Brandon Price, J. Corona, Jorge Lopez, and John/Jane Does 1-5; for violation of Plaintiff's First Amendment right to freely exercise his religion against J. Corona and Jose Lopez; and for violation of Plaintiff's First Amendment right of access to the courts against John/Jane Does 6-10. The TAC fails to state any other cognizable claim against any other defendant. The Court therefore recommends dismissing all other claims and defendants.

---

[5] *See Kindred v. Bigot*, Case No. 1:14-cv-01652-AWI-JDP (E.D. Cal.).

The Court does not recommend granting leave to amend as further amendment would be futile as to Plaintiff's Fourteenth Amendment claims, and as to Plaintiff's claims relating to the seizure of property that appears to fall within the definition of contraband.

Based on the foregoing, it is RECOMMENDED that this case proceed on Plaintiff's claim for violation of his Fourth Amendment right to be free from unreasonable search and seizure against Defendants Brandon Price, J. Corona, Jose Lopez, and John/Jane Does 1-5; for violation of Plaintiffs' First Amendment right to freely exercise his religion against Defendants J. Corona and Jose Lopez; and for violation of Plaintiff's First Amendment right of access to the courts against Defendants John/Jane Does 6-10; and that all other claims and defendants be dismissed with prejudice.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l) and this Court's Local Rule 304. Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 3, 2019**                    /s/ Erica P. Grosjean
                                                           UNITED STATES MAGISTRATE JUDGE