UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RICHARD SCOTT KINDRED,

Plaintiff,

v.

BRANDON PRICE, et al.,

Defendants.

Case No.  1:18-cv-00554-DAD-EPG

FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART

(ECF No. 65)

OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS

## I.     INTRODUCTION

Plaintiff Richard Scott Kindred ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.

This case proceeds on Plaintiff's Third Amended Complaint ("TAC") alleging claims against Defendants Brandon Price, J. Corona, Jorge Lopez, and John/Jane Does 1-5 for violation of Plaintiff's Fourth Amendment right against unreasonable search and seizure; against Defendants J. Corona and Jorge Lopez for violation of Plaintiff's First Amendment right to freely exercise his religion; and against John/Jane Does 6-10 for violation of Plaintiff's First Amendment right to access the courts. (ECF No. 23 at 2.)

On December 4, 2020, Defendants Brandon Price, J. Corona, and Jorge Lopez ("Defendants") filed a motion for summary judgment on Plaintiff's claims for violation of his Fourth Amendment rights as to each Defendant and for violation of Plaintiff's First Amendment

1

1   Rights against Defendants Corona and Lopez. (ECF No. 65.) Defendant filed an opposition on

2   March 11, 2021. (ECF No. 75.) Defendants filed a reply on March 26, 2021. (ECF No. 76.)

3        For the reasons that follow, the Court will recommend that Defendants' motion for

4   summary judgment be granted in part and denied in part.

5        **II.    BACKGROUND**

6            a.    Summary of Plaintiff's Claims

7        Plaintiff is a civil detainee at the Department of State Hospitals—Coalinga ("DSH-

8   Coalinga") confined pursuant to California's Sexually Violent Predator Act. Plaintiff alleges that,

9   between January 12, 2018, and February 20, 2018, Defendant Brandon Price, Executive Director

10  of DSH-Coalinga, ordered staff to conduct unit to unit searches pursuant to an emergency

11  regulation deeming certain electronic devices as contraband. (ECF No. 16 at 4-5.) Plaintiff's

12  personal property items, including an electric razor, battery-operated alarm clock, and down

13  pillows, were taken during these searches. (*Id.* at 5.) These items were not returned and were

    destroyed without any compensation to Plaintiff. (*Id.* at 10.)

14       Plaintiff also alleges that, on May 29, 2018, Plaintiff's religious and non-religious

15  personal property items, including a ceremonial ribbon shirt, ceremonial deer skin trousers,

16  spiritual blanket, large black duffel bag, small leather/suede duffel bag, rechargeable batteries,

17  and 24" Samsung television, were taken during a search of his living area. (ECF No. 16 at 6-7.)

18  The search was conducted by Defendant Corona but Defendant Lopez was also present during the

19  search and told Plaintiff he would watch the other officers perform the search. (*Id.* at 7.)

20       Finally, Plaintiff alleges that certain undesignated defendants were unable to locate/lost a

21  gray bin that contained Plaintiff's legal paperwork, causing Plaintiff to miss a deadline for filing a

22  petition with the U.S. Supreme Court. (ECF No. 16 at 7-8.)

23       On July 8, 2019, the Court entered findings and recommendations recommending that this

24  action proceed on the following: (1) Plaintiff's Fourth Amendment search and seizure claims

25  against Defendant Price and John/Jane Does 1-5 arising out of the January/February 2018 search;

26  (2) Plaintiff's Fourth Amendment search and seizure claims against Defendants Corona and

27  Lopez arising out of the May 29, 2018 search; (3) Plaintiff's First Amendment free exercise

28  claims against Defendants Lopez and Corona arising out of the May 29, 2018 search; and (4)

Plaintiff's First Amendment access to the courts claim against John/Jane Does 6-10 arising out of the loss of Plaintiff's legal paperwork. (ECF No. 19.)

On October 18, 2019, the district judge assigned to the case entered an order adopting the Court's findings and recommendations in full. (ECF No. 23.)

### III.    MOTION FOR SUMMARY JUDGMENT

#### a.    Defendants' Motion

On December 4, 2020, Defendants filed their motion for summary judgment. (ECF No. 65.) Defendants argue that Plaintiff has not demonstrated Article III standing on his claims. (ECF No. 65-2 at 18-22.) According to Defendants, Plaintiff cannot show an injury in fact that is traceable to Defendants or redressable by a favorable decision of this Court because: (1) his alleged harm is self-inflicted; (2) the injuries for which he seeks relief are not traceable to Lopez; (3) Price cannot be held responsible either as a supervisor or for his individual actions; (4) Corona conducted a lawful search and confiscated contraband; and (5) Plaintiff's alleged injuries cannot be redressed by a favorable decision. (*Id.*)

Defendants also argue that Plaintiff's First Amendment claim fails and Defendants Corona and Lopez are entitled to summary judgment because Plaintiff cannot establish that the items at issue were mandated by his faith and the denial of religious items did not place a substantial burden on Plaintiff's religious practice. (ECF No. 65-2 at 22-27.) Additionally, Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claims because Plaintiff did not have a reasonable expectation of privacy during either the January 2018 or the June 2018 search and the items seized were contraband. (*Id.* at 27-29.) Even if non-contraband items were inadvertently confiscated, there was no Fourth Amendment violation because California law provides Plaintiff with a post-deprivation remedy and Plaintiff was permitted to mail out confiscated property. (*Id.* at 30-31.) Finally, Defendants are entitled to qualified immunity. (*Id.* at 31-33.)

#### b.    Plaintiff's Opposition

Plaintiff filed an opposition to Defendants' motion for summary judgment on March 11, 2021. (ECF No. 75.) In his opposition, Plaintiff argues that Defendant Price is responsible for running the facility and is just as guilty or liable as the individuals who violated Plaintiff's civil

1    rights. (*Id.* at 312, 358.)

2         Plaintiff argues that his injuries are traceable to Defendant Lopez and the May 2018

3    search was an "illegal" search that did not comply with DSH-Coalinga's policies, procedures,

4    and/or administrative directives. (*Id.* at 318-19, 329-30, 344-46.) Defendants additionally are not

5    entitled to summary judgment on the Fourth Amendment claims because the items confiscated

6    were not contraband. (*Id.* at 340.)

7         Finally, Plaintiff argues that the religious items seized during the May 2018 search

8    substantially burdened Plaintiff's beliefs because DSH-Coalinga is on modified program due to

9    COVID-19 and all services and ceremonies were stopped, therefore the only connection to his

10   spiritual beliefs was his spiritual/healing blanket. (ECF No. 75 at 330, 336-39.)[1]

11            c.  Defendants' Reply

12        Defendants filed a reply on March 26, 2021. (ECF No. 76.) In their reply, Defendants

13   argue that Plaintiff cannot establish that any of the items confiscated during the May 2018 search

14   are mandated by his faith or that deprivation of these items substantially burdens Plaintiff's

15   religious practice. (*Id.* at 2.) Additionally, Plaintiff's opposition relies on legal conclusions and

16   authorities rather than facts or evidence. (ECF No. 76 at 2-3.) The evidence Plaintiff has produced

17   does not support his claims. (*Id.* at 3.) Finally, the opposition is fifty-five pages in length and

18   exceeds the twenty-five page limit,[2] and the opposition also raises issues that are not part of this

19   case. (*Id.* at 4.)[3]

---

20   [1] Plaintiff also makes several arguments that are outside the scope of the TAC and Defendants' motion for summary
21   judgment. For instance, Plaintiff alleges that: (1) a 500gb hard drive and 63 gb hard drive were voluntarily turned in
     during DSH-Coalinga's amnesty program and were supposed to be mailed to Plaintiff's brother but were not; (2) the
     June 29, 2018 search was in retaliation for Plaintiff's civil litigation against DSH-Coalinga and Sergeant Kenneth
     Bell; and (3) Unit Supervisor Rodriguez took and destroyed Plaintiff's altar in September of 2019. (ECF No. 75 at 3,
22   313-314, 339.) These claims were not alleged in the TAC or addressed in the Court's screening order and Plaintiff
     has not sought leave to amend his complaint. (*See* ECF Nos. 16, 19.) Therefore, these arguments are not addressed in
23   the Court's findings and recommendations. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1292-93 (9th Cir.
     2000) (finding no error when the district court refused to allow plaintiffs to proceed with a new theory of liability in
24   opposition to a motion for summary judgment after the close of discovery because it would prejudice the defendant).

25   [2] Although the Court has considered Plaintiff's opposition brief in its entirety for purposes of this motion, Defendants
     are correct that it exceeded the page limitations imposed by the Scheduling Order. Plaintiff is reminded that all
     moving and opposition briefs are not to exceed twenty-five pages and reply briefs are not to exceed ten pages. (*See*
26   ECF No. 43 at 4-5.) Future failures to comply with the Court's orders may result in the imposition of sanctions.

27   [3] Defendants also filed various objections to the evidence Plaintiff submitted in support of his opposition. (ECF No.
     77.) To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on
28   evidence it considered to be admissible.  Generally, it is not the practice of the Court to rule on evidentiary matters

1
### IV.   SUMMARY JUDGMENT LEGAL STANDARDS

2        Summary judgment in favor of a party is appropriate when there "is no genuine dispute as

3   to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

4   56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine

5   dispute about material facts, summary judgment will not be granted.").  A party asserting that a

6   fact cannot be disputed must support the assertion by "citing to particular parts of materials in the

7   record, including depositions, documents, electronically stored information, affidavits or

8   declarations, stipulations (including those made for purposes of the motion only), admissions,

9   interrogatory answers, or other materials, or showing that the materials cited do not establish the

10  absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

11  evidence to support the fact."  Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in

12  the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3);

13  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

14       A party moving for summary judgment "bears the initial responsibility of informing the

15  district court of the basis for its motion, and identifying those portions of 'the pleadings,

16  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

17  any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*

18  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "In order to carry its

19  burden of production, the moving party must either produce evidence negating an essential

20  element of the nonmoving party's claim or defense or show that the nonmoving party does not

21  have enough evidence of an essential element to carry its ultimate burden of persuasion at

22  trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). If

23  the moving party moves for summary judgment on the basis that a material fact lacks any proof,

24  the Court must determine whether a fair-minded jury could reasonably find for the non-moving

25  party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a

26

27  individually in the context of summary judgment. "This is especially true when, as here, 'many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence.'" *Capital Records, LLC v. BlueBeat, Inc.,* 765 F.Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010) (quoting *Doe v.*

28  *Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)).

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed . . .." *Anderson*, 477 U.S. at 255.

### V. DISCUSSION

#### a. Fourth Amendment Claims

##### i. Fourth Amendment Legal Standards

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." U.S. Const. amend. IV. This prohibition against unreasonable search and seizure extends to incarcerated prisoners and civil detainees. *Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997) (prisoners); *Hydrick v. Hunter*, 500 F.3d 978, 993 (9th Cir. 2007) (civil detainees), *judgment vacated on other grounds*, 556 U.S. 1256 (2009).

For the Fourth Amendment to apply, there must be a "reasonable expectation of privacy in the area invaded." *Espinosa v. City and County of San Francisco,* 598 F.3d 528, 533 (9th Cir. 2010). "Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California,* 547 U.S. 843, 848 (2006) (internal quotation marks omitted).

*ii.   Supervisory Liability Legal Standards*

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).  To establish liability under section 1983 based on a theory of supervisory liability, a plaintiff must establish that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

*iii.   January 2018 Search and Seizure*

Plaintiff's claim for violation of his Fourth Amendment rights arising out of the January 2018 search of his living area and seizure of his personal property proceeds against Defendant Price and Doe defendants. (ECF No. 19.)

Defendant Price moves for summary judgment on the ground that he cannot be held liable either as a supervisor or due to his individual actions. (ECF No. 65-2 at 21.) Plaintiff argues that Defendant Price is liable for the alleged constitutional violations because

> he refused to take any action against those under his authority for either not
> adhering to his instructions as [to] what they were suppose[d] to be taking as
> [c]ontraband or he failed to give any and allowed those under his authority just to
> take and destroy whatever they wanted[.] Either way he is liable since he is the one
> who gave the order to search patients' units and he is liable for the actions or
> inactions of those he told to search and take patients' property in most cases not
> leaving a [confiscation] receipt [or] not signing it as they are suppose[d] to do so

1  they wouldn't be held accountable for their actions because what they were doing
2  was wrong.

(ECF No. 75. at 313.)

3      For the reasons described below, the Court will recommend that summary judgment be
4  granted in favor of Defendant Price on Plaintiff's Fourth Amendment search and seizure claim.

5      It is undisputed that, on January 12, 2018, Defendant Price issued a memorandum to all
6  DSH-Coalinga patients concerning the Office of Administrative Law's approval of the emergency
7  amendment to California Code of Regulations title 9 Section 4350 ("Section 4350"), pertaining to
8  electronic devices. (UMF 61, ECF Nos. 65-3 at 8, 75 at 357.) The memorandum notified patients
9  that an emergency regulation had been approved by the Office of Administrative Law and that
10  patients were not permitted to possess certain electronic devices, including but not limited to
11  desktop computers, laptop computers, and digital media recording devices, and that they could
12  not possess floppy disks, hard disks, VHS tapes, and items capable of memory storage (including
13  thumb drives, flash drives, SIM cards, etc.). (UMF 62, ECF Nos. 65-3 at 8, 75 at 357.) An
14  Amnesty and Voluntary Turn-in Program was in effect from January 19, 2018, through January
15  28, 2018 where patients were given the option to sign a voluntarily consent form and turn over
16  devices that would be considered contraband. (UMF 65, ECF Nos. 65-3 at 8, 75 at 357.) At the
17  end of the amnesty/grace period, DSH Coalinga conducted a facility-wide search. (UMF No. 66,
   ECF Nos. 65-3 at 9, 75 at 358.)[4]

18
19      Plaintiff does not challenge the constitutionality of Section 4350. *See Allen v. King,* 741
20  Fed.Appx. 463 (9th Cir. 2018) (affirming district court's grant of summary judgment on
21  substantive due process challenges to Section 4350). Plaintiff also does not challenge the
   constitutionality of the facility-wide search.[5] Defendant Price therefore is not liable for
22

23  [4] Defendant contends that the facility-wide search lasted from January 29, 2018, to January 31, 2018. (UMF No. 67; ECF No. 65-3 at 9.) Plaintiff contends that his unit was searched three separate times and one of them was in
24  February. (ECF No. 75 at 358.) However, it is undisputed that the search at issue here occurred on January 28 or 29, 2018. (*See* Office of Patients' Rights Complaint Form dated March 26, 2018; ECF No. 75 at 36 ("On January 28th or
25  29th 2018, Complainant Unit [sic] was searched.").)

26  [5] Plaintiff's response to the Separate Statement of Undisputed Material Facts indicates he disputes Defendants' statement that "[a]t the end of the amnesty/grace period, it was necessary to conduct a search of every room on every
27  unit in the entire facility for any electronic contraband" because Plaintiff contends that "the reason for the hospital wide search was suppose[d] to be for the search for electronic devices that could store data." (UMF No. 66; ECF No.
28  65-3 at 9, 75 at 358.) In support, Plaintiff cites the notice of emergency regulations regarding Section 4350. (ECF No. 75 at 9-19, 358.) However, there does not appear to be a material distinction between "electronic contraband" and

1  promulgating or implementing a deficient policy.

2          The Court also finds that there is no genuine dispute of fact that Defendant Price was not

3  personally involved in the January 2018 search. Defendant Price provides a sworn declaration

4  stating that he did not personally participate in the physical search, did not instruct staff to

5  confiscate non-contraband, and did not learn that non-contraband property had been confiscated

6  until after the search was completed. (Declaration of Brandon Price, ECF No. 65-6 at 7-8; UMF

7  Nos. 70-71, ECF Nos. 65-3 at 9, 75 at 358.) Defendant Price meets his burden of showing that he

8  was not personally involved in the January 2018 search and the burden shifts to Plaintiff to show

9  some evidence that Defendant Price was personally responsible for the actions Plaintiff claims

10  violated his rights. *Black v. Hansen,* 2015 WL 1294965, at *7 (E.D. Cal. Mar. 23, 2015).

11          Plaintiff argues that Defendant Price did not act to stop or report the violations, either

12  refused to take any action against those under his authority who did not adhere to his instructions

13  regarding what they were supposed to be taking or failed to give any instructions at all, and

14  allowed individuals under his authority to just take and destroy whatever they wanted. (ECF No.

15  75 at 312, 358.) According to Plaintiff, Defendant Price "is liable since he is the one who gave the

16  order to search patients' units and he is liable for the actions or inactions of those he told to search

17  and take patients' property[.]" (*Id.* at 358.)

18          The Court does not find Plaintiff's arguments persuasive. Plaintiff states that Defendant

19  Price admitted to failing to properly give instructions to those in supervisory positions. (ECF No.

20  75 at 358.) However, Plaintiff does not identify any supporting evidence for this argument. *See*

21  *Taylor,* 880 F.2d at 1045 ("A summary judgment motion cannot be defeated by relying solely on

22  conclusory allegations unsupported by factual data."). Defendant Price's declaration states that

23  "[a]ll employees receive in-service training on control of contraband" and "I never instructed

24  DSH-Coalinga staff to confiscate non-contraband items during the facility-wide search in January

25  2018." (Price Decl., ECF No. 65-6 at 2.) Further, according to Defendant Price's declaration, he

26  was "made aware that some non-contraband items may have been inadvertently confiscated

27  during the search" after the search was completed. (*Id.* at 8.) After Defendant Price learned that

28  "electronic devices that could store data" and Plaintiff does not argue that the facility-wide search itself was
unconstitutional.

some non-contraband items may have been confiscated, according to his declaration, "DSH-Coalinga staff work[ed] to return . . . non-contraband items to patients." (*Id.*) Plaintiff did not submit any evidence rebutting Defendant Price's declaration.  Therefore, there is no genuine dispute that training on control of contraband was provided, DSH-Coalinga staff was not instructed to confiscate non-contraband items during the January 2018 search, Defendant Price learned that non-contraband items were confiscated after the search was complete, and efforts were made to return non-contraband to patients.

Plaintiff also contends that that Defendant Price admitted that he was made aware that staff were not adhering to his directions and were taking non-contraband. (ECF No. 75 at 358.) The evidence Plaintiff submits in support of his opposition includes correspondence from the Office of Patients' Rights and from Defendant Price acknowledging that non-contraband was inadvertently taken during the January 2018 search. (*See* ECF No. 75 at 58, 63-64.)  However, these letters are respectively dated June 8, 2018, and September 19, 2018, after the facility-wide search was conducted. (*See id.*) This evidence does not indicate that Defendant Price was made aware either during or before the search that any non-contraband was taken. Construing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that Defendant Price was personally involved in the January 2018 search.

Finally, as to Plaintiff's argument that Defendant Price is liable for the conduct of others solely because he "gave the order" to perform the search, Defendant Price cannot be held liable for the actions of his subordinates under a vicarious liability theory. *See Iqbal,* 556 U.S. 662 (holding that, when a supervisor does not directly participate in the constitutional violation, the supervisor cannot be liable under § 1983 unless the plaintiff shows the supervisor through his "own individual actions violated the constitution"). Here, the evidence before the Court, even when viewed in the light most favorable to Plaintiff, does not establish that Defendant Price implemented an unconstitutional policy, was personally involved in the alleged deprivation of Plaintiff's constitutional rights, or knew of the violations and failed to act to prevent them.

The Court will therefore recommend that summary judgment be granted to Defendant Price on Plaintiff's Fourth Amendment search and seizure claim arising out of the January 2018

search.[6]

### iv.   *June 2018 Search and Seizure*[7]

Plaintiff's Fourth Amendment claims arising out of the June 2018 search and seizure proceed against Defendants Corona and Lopez. (ECF No. 19 at 12.)

Defendants Corona and Lopez move for summary judgment on several grounds, including that: (1) the items seized were contraband; (2) Defendant Lopez was not involved in the search or seizure; (3) the search was not unlawful because Plaintiff did not have a reasonable expectation of privacy in his living area pursuant to AD 820; (4) California law provides Plaintiff with an adequate post-deprivation remedy; (5) Plaintiff was permitted to mail out the seized items; and (6) Defendants Corona and Lopez are entitled to qualified immunity. (ECF No. 65-2.) Plaintiff, in turn, argues that none of the items seized were contraband, Defendant Lopez was involved in the search, the search was not conducted according to DSH-Coalinga's policies, and Defendants Corona and Lopez are not entitled to qualified immunity. (ECF No. 75.)

For the following reasons, the Court will recommend that Defendants Corona and Lopez be granted summary judgment as to Plaintiff's Fourth Amendment claim arising out of the seizure of Plaintiff's ribbon shirt and deer skin trousers and that summary judgment be denied as to the remainder of Plaintiff's Fourth Amendment claims regarding the June 2018 search and seizures.

### 1.   Seizure of Contraband

It is undisputed that, on June 29, 2018, DSH-Coalinga staff performed a search of Plaintiff's living area.[8] (UMF 97; ECF No. 65-3 at 12.) For purposes of summary judgment, the following items were confiscated during the June 2018 search:[9] a black Samsung television with a

---

[6] Given the Court's recommendation, the Court declines to make any findings and recommendations regarding Defendants' remaining arguments for summary judgment on Plaintiff's Fourth Amendment claim arising out of the January 2018 search. (*See* ECF No. 65-2.)

[7] Although the TAC originally alleged that this search occurred in May of 2018, the parties do not dispute that the search actually occurred on June 29, 2018. (*See* UMF No. 97; ECF Nos. 65-3 at 12, 75 at 360.)

[8] In response to Defendant's statement of undisputed material facts, Plaintiff indicates this fact is "disputed due to the fact that the search and seizure that took place on June 29, 2018, was an illegal search and seizure and a violation of plaintiff's 1st and 4th Amendment Rights Under the United States Constitution." (ECF No. 75 at 360.) Therefore, while Plaintiff disputes the legality of the search, he does not dispute that a search occurred on June 29, 2018.

[9] Plaintiff's response to Defendant's statement of undisputed material facts indicates he disputes the purpose of the search, the legality of the search and seizure, and whether the items taken were contraband, but Plaintiff does not indicate that he disputes whether these items were seized during the search. (ECF No. 75 at 360.)

1  thumb drive attached, a khaki duffel bag containing a shirt and deer skin trousers, a black duffel

2  bag containing a blanket, and batteries.[10] (UMF 105-07; ECF Nos. 65-3 at 12, 75 at 360.)

3        Defendants Corona and Lopez argue that the Samsung television, black duffel bag, khaki

4  duffel bag, blanket, ribbon shirt, and deer skin trousers confiscated during the June 2018 search

5  were contraband and therefore Plaintiff either lacks standing because his injuries were self-

6  inflicted or the seizure of those items did not violate the Fourth Amendment.[11] (ECF No. 65-2 at

7  11-12.) Plaintiff, in turn, argues that none of these items were contraband. (ECF No. 75 at 345-

8  46.)

        *Samsung Television*

9        Defendants Corona and Lopez argue that the television was confiscated because it had a

10  thumb drive plugged into the television and was being used in an improper manner. (ECF Nos.

11  65-2 at 29, 65-3 at 14.) Defendants submit a copy of the Statewide Contraband list, which

12  identifies "[a]ny item that is being used in an improper manner and / or altered in such a manner

13  as to present a danger to the safety of any patient, staff member, or visitor" as contraband.

14  (Declaration of Matthew Day, Ex. 1; ECF No. 65-4 at 5.) Plaintiff, in turn, submits a sworn

15  declaration stating that there was no thumb drive in the pictures of the television produced in

16  discovery.[12] (ECF No. 75 at 6.) Plaintiff also submitted a memorandum dated May 13, 2014, from

17  Executive Director Audrey King to the Civil Detainees' Advisory Council with the subject

18  "Contraband Clarification" which states "[i]mproper should mean that the item is being used in

19  such a way that it presents a danger to the safety of any patient, staff member or visitor." (ECF

20  No. 75 at 241.)

21        Both parties also produced a copy of a Coalinga State Police Department Report authored

22  by Harry Silvas concerning the June 2018 search. (Day Decl., ECF No. 65-5 at 71-79; ECF No.

23

---

24  [10] Plaintiff alleged that batteries were confiscated during the June 2018 search. Defendants contend that the batteries were not identified on either the search or the confiscation receipts. (UMF 108, ECF No. 65-3 at 12; ECF No.

25  65-2 at 29.) Plaintiff asserts that there was no mention of the batteries being confiscated either on the search report or the confiscation receipts because staff failed to write them down. (ECF No. 75 at 361.) Thus, construing the disputed

26  facts in favor of Plaintiff as the non-moving party, the Court will assume that batteries were also confiscated.

27  [11] Defendants do not allege the batteries were contraband; they only claim that the batteries were not confiscated. (ECF No. 65-2 at 11-12.)

28  [12] Plaintiff also produced copies of the photographs, but they were not legible.

75 at 401-409.) This report states:

> At approximately 0737 hours, Sergeant Corona located a thumb drive attached to the back of a Black Samsung television with serial number 030R3CPF908113F. At approximately 0740 hours, the thumb drive was removed from the television and I took possession of the thumb drive and kept it in my possession at all times for safe keeping.
>
> . . .
>
> At approximately 0835 hours, Officer Dominguez and I transported the Samsung T.V. to the Patient Property Room. . . . Officer Chavana took possession of the Samsung T.V listed on Kindred's DSH-C 102 Form.
>
> At approximately 0915 hours, I transported the Thumb drive along with the other confiscated items to the Department of Police Services (DPS) Evidence Room.

(ECF Nos. 65-6 at 76-78, 75 at 406-408.)

Although Plaintiff does not dispute that the thumb drive was contraband, the evidence submitted by the parties indicates that the thumb drive was removed from the television during the search. Additionally, the parties have submitted conflicting evidence regarding the meaning of the term "used in an improper manner" for purposes of the Statewide Contraband list. Viewing the evidence in a light most favorable to Plaintiff, the Court finds that there is a dispute of material fact as to whether the television was used "in an improper manner" and therefore contraband within the meaning of the Statewide Contraband list.

*Black Duffel Bag and Khaki Duffel Bag*

Defendants Corona and Lopez argue that the black duffel bag was contraband because it exceeded the allowable size for luggage under the DSH-Coalinga Site Specific Contraband list. (ECF Nos. 65-2 at 29, 65-3 at 3, 16.) Defendants submit a copy of the Site Specific Contraband list, which refers to the Statewide Contraband list's inclusion of luggage as contraband and says that DSH-Coalinga "considers luggage to be bags larger than 18" x 14" x 8"." (Day Decl., Ex. 2; ECF No. 65-4 at 11.)

Plaintiff does not dispute that the black duffel bag exceeded the size limitations for luggage on the Site Specific Contraband list. (UMF 142, ECF Nos. 65-3 at 6, 75 at 363.) However, Plaintiff argues that the duffel bag was not contraband because the May 13, 2014 Contraband Clarification memorandum states that luggage refers to "[a]ny large hard framed and/or hard walled container with handles and/or wheels" and does not include "[a] cloth duffel

bag or backpack[.]" (ECF No. 75 at 243.) Defendants did not respond to this argument on reply. (*See* ECF No. 76.)

This evidence, viewed in a light most favorable to Plaintiff, creates a dispute of fact that regarding whether the black duffel bag was contraband.

Defendants also argue that the khaki duffel bag was contraband under the same provision of the Site Specific Contraband list defining luggage exceeding specified size limitations as contraband. (ECF Nos. 65-2 at 29, 65-3 at 3, 13.) However, Defendants have not produced any evidence regarding the size of the khaki duffel bag. Defendants therefore not met their burden of establishing that the khaki duffel bag was contraband.

*Spiritual Blanket*

Defendants Corona and Lopez argue that the spiritual blanket was contraband under the Site Specific Contraband list. (ECF Nos. 65-2 at 29, 65-3 at 3.) Plaintiff argues that the spiritual blanket was not contraband because he won the right to have the blanket in an appeal. (ECF No. 75 at 345.)

The Site Specific Contraband list only states that "[b]ed coverings, including but not limited to blankets, bedspreads, quilted bedding items, linen and fleece throws are not to be considered prayer rugs or spiritual rugs." (Day Decl., Ex. 2, ECF No. 65-4 at 11.) It otherwise does not state that blankets are contraband.

Defendants also submit a declaration from Defendant Price stating that "[l]arge quilts or comforters are not permitted in the living space as DSH-Coalinga lacks the laundry facilities to clean them and therefore present a health concern." (Price Decl.; ECF No. 65-6 at 3.) Defendant Price refers to AD 843, which governs patient living areas, in support of his declaration. (Price Decl., Ex. 7; ECF No. 65-7 at 32-40.) AD 843 states that additional coverings, including blankets, shall not be attached to the privacy or window curtains, and further prohibits "[e]xcessive amounts of items/materials (sheets, blankets, clothing, food, equipment, etc.)" because they constitute a fire hazard. (ECF No. 65-7 at 37.) AD-843 further sets forth a procedure to be followed if a patient's property is deemed excessive and needs to be removed. (*Id.* at 37-38.)

Neither the Site Specific Contraband list or AD 843 defines blankets as contraband or categorically bans patients from possessing them. Defendants have not submitted any evidence

that Plaintiff's spiritual blanket was "excessive" within the meaning of AD 843. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Defendants have failed to meet their burden of establishing that the spiritual blanket was contraband.

*Ribbon Shirt and Deer Skin Trousers*

Finally, Defendants argue that the ribbon shirt and deer skin trousers were contraband under the Statewide Contraband list. (ECF Nos. 65-2 at 29, 65-3 at 4-5, 8.) The Statewide Contraband list includes "Non State Issued clothing pursuant to California Code of Regulations, title 9, section 890. Exception – personal items such as: shoes, caps, beanies, gloves or undergarments that do not meet other contraband criteria" as contraband.[13] (Day Decl., Ex. 1; ECF No. 65-4 at 6.)

Plaintiff does not contest that the ribbon shirt and deer skin trousers were non-state issued clothing. Instead, Plaintiff argues that the ribbon shirt and deer skin trousers were not contraband because "the W.R.P.T. has the authority along with program to allow certain items for treatment issues and it is shown that this individual can adhere to the set agreements and follow directions." (ECF No. 75 at 354.) According to Plaintiff, the ribbon shirt and deer skin trousers were approved by his treatment team and were therefore not contraband. (*Id.* at 354, 357.)

In support of his argument, Plaintiff cites to AD 448 regarding personal leisure equipment and to Plaintiff's treatment plan. (ECF No. 75 at 354, 357.) AD 448 permits patients to handle, store, purchase, and maintain personal leisure equipment with the approval of their Treatment Plan Team. (ECF No. 75 at 191.) Plaintiff's treatment plan states that, on April 10, 2018, Plaintiff "obtained approval for 'Off-unit use of personal art work' for transporting non-contraband and/or art supplies for Open Art Studio group[.]" (*Id.*) at 203.) Plaintiff was also granted approval to purchase sinew. (*Id.* at 204.)

Defendants' evidence establishes that non-state issued clothing is contraband and that the ribbon shirt and deer skin trousers were non-state issued. Defendants have therefore met their burden of establishing that the ribbon shirt and deer skin trousers were contraband. None of Plaintiff's evidence contradicts these facts or establishes that Plaintiff was permitted to possess

---

[13] 9 C.C.R. § 890 states "[t]he facility director shall specify the types of clothing that are authorized to be worn by non-LPS patients in the facility."

the ribbon shirt and deer skin trousers. Plaintiff's treatment plan only states that he may possess non-contraband items and does not reference the ribbon shirt or deer skin trousers. This evidence does not indicate that the treatment team allowed Plaintiff to possess contraband or even had the authority to do so.[14] Accordingly, viewing the evidence in the light most favorable to Plaintiff, there is no genuine dispute that the ribbon shirt and deer skin trousers were contraband.

As a civil detainee, Plaintiff does not have a constitutional right to possess contraband. *See Gould v. Ahlin,* 2018 WL 1959545, at *11 (E.D. Cal. Apr. 25, 2018) (finding that a civil detainee did not have a reasonable expectation of privacy in possessing contraband); *Knight v. Yarborough,* 2011 WL 4550190, at *18 (C.D. Cal. Aug. 22, 2011) ("Inmates do not have a constitutional right to keep, or to dispose of contraband materials as they wish."). "[T]he reasonableness of a particular search [or seizure] is determined by reference to the [detention] context" including "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations." *Hydrick,* 500 F.3d at 993 (citations omitted). The seizure of the ribbon shirt and deer skin trousers was reasonable in this context because they were contraband under DSH-Coalinga policies. Plaintiff also does not challenge the constitutionality of the DSH-Coalinga's contraband policies. Defendants Corona and Lopez are therefore entitled to partial summary judgment on Plaintiff's Fourth Amendment claim for seizure of the ribbon shirt and deer skin trousers.

### 1.   Defendant Lopez

Defendants argue that Plaintiff's injuries are not traceable to Lopez because he did not participate in the search of Plaintiff's living space. (ECF No. 65-2 at 20-21.) Defendants contend that, on June 29, 2018, Defendant Corona informed Defendant Lopez that a search for contraband

---

[14] Plaintiff filed a sworn declaration in support of his opposition stating that his recreational therapist, Richard Sorrentos, would give testimony concerning the approval of the items and ability to store them in his room but Plaintiff has been unsuccessful in contacting Mr. Sorrentos. (ECF No. 75 at 5.) However, this is not sufficient evidence to raise a disputed issue for trial. To be considered on a motion for summary judgment, any evidence must be capable of reduction to an admissible form at trial. *Norse v. City of Santa Cruz,* 629 F.3d 966, 973 (9th Cir. 2010) ("While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence."). There is no indication that Plaintiff can reduce Mr. Sorrentos' testimony to an admissible form for trial, as Plaintiff admits that he has not been able to contact Mr. Sorrentos and does not provide any information about whether he would be able to do so in the future. *See, e.g., JL Beverage Co. LLC., v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (finding hearsay statements not subject to exception were properly disregarded at summary judgment where party did not argue the out-of-court declarants would be available to testify at trial).

would be conducted in Plaintiff's dorm room. (ECF No. 65-3 at 12.) Defendant Lopez did not take part in the search or confiscation of Plaintiff's property and was just a witness. (*Id.*) Defendants cite to the Coalinga State Police Department Report authored by Harry Silvas concerning the June 2018 search. (*Id.*) According to this report, Defendant Corona notified Defendant Lopez regarding the search shortly before the search occurred and Defendant Lopez agreed to stand by and watch the search. (ECF No. 65-5 at 76.)

Plaintiff disputes these facts because he contends Defendant Corona did not tell Defendant Lopez about the search until after it began. (ECF No. 75 at 360.) Plaintiff also argues that Defendant Lopez escorted him from his living area and told him that he would come back and watch the others search Plaintiff's things. (*Id.* at 315.) According to Plaintiff, Defendant Lopez is just as guilty and liable for standing by and not taking any action to stop the violations of Plaintiff's constitutional rights. (*Id.* at 360.)

"[O]fficers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon,* 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), *rev'd on other grounds,* 518 U.S. 81 (1996). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000), *as amended* (Oct. 31, 2000) (holding that non-shooting and non-present officers cannot be held liable for failing to intercede to prevent shooting); *cf. Robins v. Meecham,* 60 F.3d 1436, 1442 (9th Cir. 1995) (denying summary judgment as to bystander officers because "In none of the affidavits submitted with the officers' motion for summary judgment do any of the officers state they did not have the opportunity to intervene to prevent Officer Meecham from firing the gun. On the other hand, the affidavits of the officers and Robins indicate that all three officers were together in the control bubble").

Defendants argue that an individual may not be held liable merely for being present at the scene of a constitutional violation and Plaintiff must establish that the constitutional deprivation arises from an affirmative act, participation in another's affirmative acts, or the failure to perform an act which is legally required. (ECF No. 65-2 at 20.) However, the theory at issue in this case is not that Defendant Lopez was merely present during the search. Defendant Lopez was alleged to be liable for his failure to perform an act which was legally required, namely the failure to

intervene to prevent the other officers from violating Plaintiff's Fourth Amendment rights. In the TAC, Plaintiff alleged that Defendant Lopez told him to leave his living area during the June 2018 search and stated "I'll come back and watch them search your area." (ECF No. 16 at 6-7.) At screening, the Court found that it could be inferred from the allegations of the TAC that Defendant Lopez watched while Defendant Corona and others searched Plaintiff's living area and failed to prevent the seizure of Plaintiff's property. (ECF No. 19 at 12.) According to Plaintiff's allegations, Defendant Lopez was not merely present during the June 2018 search and was an active participant.

It is undisputed that Defendant Lopez was present during the search. Defendants do not argue or present any evidence establishing that Defendant Lopez did not have an opportunity to intervene and prevent Defendant Corona or any of the other officers from violating Plaintiff's Fourth Amendment rights. The parties also dispute when Defendant Corona first told Defendant Lopez about the search, which creates a dispute of fact regarding whether and when Defendant Lopez had an opportunity to intervene. Construing the evidence in Plaintiff's favor, Defendant Lopez could be liable based on his participation in the June 2018 search even if he himself did not perform the actual search. Accordingly, the Court finds that Defendants have failed to meet their burden of establishing that, as a matter of law, Defendant Lopez was not liable for a violation of Plaintiff's constitutional rights regarding the June 2018 search.

### 2.   Plaintiff's Expectation of Privacy

Defendants Corona and Lopez also argue that the June 2018 search did not violate Plaintiff's Fourth Amendment rights because Plaintiff did not have a reasonable expectation of privacy in his living area. (ECF No. 65-2 at 29.) Plaintiff, in turn, argues that Defendants Corona and Lopez could not search his living area without probable cause. (*Id.* at 344.)

"[T]he reasonableness of a particular search is determined by reference to the [detention] context." *Michenfelder v. Sumner,* 860 F.2d 328, 332 (9th Cir. 1988). Civil detainees are entitled to more considerate treatment and conditions of confinement than prisoners. *Youngberg v. Romeo,* 457 U.S. 307, 322 (1982). However, there are concerns in the civil detention context that mirror those that arise in prison, and civil detainees remain subject to legitimate, non-punitive government interests such as maintaining facility security and effectively managing the

institution. *Hydrick,* 500 F.3d at 993; *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).

The Ninth Circuit has addressed the scope of a civil detainee's Fourth Amendment rights in *Hydrick*, 500 F.3d at 993. *Hydrick* involved a class of civil detainees committed pursuant to California's Sexually Violent Predator Act alleging that the conditions of their confinement at Atascadero State Hospital violated several of their constitutional rights. 400 F.3d at 983. The defendants filed a motion to dismiss based largely on qualified immunity. *Id.* The Ninth Circuit recognized that the Fourth Amendment's proscription against unreasonable searches and seizures "certainly extends to SVPs." 500 F.3d at 993. The *Hydrick* court held that, while "the safety and security of guards and others in the facility, order within the facility, and the efficiency of the facility's operations" are concerns in the civil detention context, "qualified immunity does not protect a search or seizure that is arbitrary, retaliatory, or clearly exceeds the legitimate purpose of detention." *Id.* (citation omitted). *Hydrick* accordingly recognized that civil detainees are entitled to Fourth Amendment protection from arbitrary searches.[15]

Construing the evidence in the light most favorable to Plaintiff, there is a dispute of fact as to whether the June 2018 search was arbitrary. Both parties submitted copies of AD 820, DSH-Coalinga's search policy and procedures. (ECF Nos. 65-7 at 21-30, 75 at 159-168.) AD 820 states that "[s]earches may be conducted randomly which does not require specific cause, or when necessary which requires showing of cause." (ECF Nos. 65-7 at 21, 75 at 159.) Random searches of patients' living areas are conducted a minimum of once weekly as a part of each unit or area routine, and living areas may be searched more than once weekly. (ECF Nos. 65-7 at 23, 75 at 161.) These random searches do not require specific cause. (*Id.*) Additionally, searching a specific patient's personal storage area is permitted when there is reason to believe that contraband is

---

[15] The Ninth Circuit also recognized that civil detainees are entitled to Fourth Amendment protection from arbitrary searches in an unpublished opinion, *Meyers v. Pope,* 303 Fed.Appx.513, 516 (9th Cir. 2008). In *Meyers*, the plaintiff was confined as a civil detainee pursuant to California's Sexually Violent Predator Act. 202 Fed. Appx. at 515. The district court granted summary judgment in favor of the defendants on the plaintiff's Fourth Amendment claim and the Ninth Circuit vacated the order and remanded for further proceedings. *Id.* Citing to *Hydrick,* the *Meyers* court recognized that a search in the civil detention context violates the Fourth Amendment if it is "arbitrary, retaliatory, or clearly exceeds the legitimate purpose of detention." *Id.* at 516. There, the plaintiff was forced to strip while his cell was searched and, on one occasion, forced to undergo a strip search which involved a visual cavity search. *Id.* Therefore, the district court erred in entering judgment for defendants on the plaintiff's claim that the defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures. *Id.*

present or a condition exists that poses a threat to the safety and/or security of the hospital, patients, and employees. (ECF Nos. 65-7 at 24, 75 at 162.) A patient representative may be present during either type of search, provided no safety or security concern exists or arises. (*Id.*) Patients are not allowed to be intrusive during the search and non-compliant patients are to be removed from the area for safety. (*Id.*)

Both parties also submit copies of the Coalinga State Police Department Report for the June 2018 search. (ECF Nos. 65-5 at 71-79, 75 at 401-409.) According to this report, the Pruno Interdiction Team ("PIT") entered Plaintiff's dorm at approximately 6:53 AM "to conduct a search for cause[.]" (ECF Nos. 65-5 at 76, 75 at 406.) However, Defendant Corona told Plaintiff "a random search" was going to be conducted in his living area. (*Id.*) The room was cleared at approximately 6:55 AM. (*Id.*) At approximately 7:00 AM, a sergeant found a gallon of patient manufactured alcohol, known as pruno, in the sports room while searching general areas. (*Id.*) At approximately 7:02 AM, officers began to search Plaintiff's living area again. (*Id.*) During this search, officers located and removed various items, including the Samsung television, khaki duffel bag, ribbon shirt, deer skin trousers, black duffel bag, and spiritual blanket. (ECF Nos. 65-5 at 76-77, 75 at 406-07.)

The parties do not appear to dispute that non-random searches are supposed to be supported by cause. However, there is a dispute of fact regarding whether the June 2018 search was a random search or a non-random search for cause. The Coalinga State Police Department report describes the search as a search for cause, but also indicates that Defendant Corona told Plaintiff that it was a random search. The report says that Plaintiff's room was cleared at 6:55 AM and was searched again at 7:02 AM, at which point Plaintiff's property was seized as contraband. The parties do not submit any arguments or evidence as to whether this second entry was random and without cause or suspicion-based, or whether these two entries were part of a single, continuous search.

Defendants Corona and Lopez have failed to show as a matter of law that Plaintiff did not have any reasonable expectation of privacy in his living area. Construing the evidence in a light most favorable to Plaintiff, the Court finds that there is a dispute of fact as to whether the June 2018 search was arbitrary. Accordingly, the Court does not recommend granting summary

judgment in favor of Defendants Corona and Lopez on Plaintiff's Fourth Amendment claims regarding the June 2018 search.

### 3.   Post-Deprivation Remedy

Defendants argue that Plaintiff cannot state a cognizable claim for relief based on the continued deprivation of the batteries because California law provides Plaintiff with a post-deprivation remedy. (ECF No. 65-2 at 30.) Defendants cite to *Hudson v. Palmer,* 468 U.S. 517 (1984) and *Barnett v. Centoni,* 31 F.3d 813, 816-17 (9th Cir. 1994) in support of this argument. (*Id.*) However, these cases apply to constitutional claims for deprivation of due process. *See Hudson,* 468 U.S. at 533 n. 14 (holding that an intentional destruction did not violate the Fourteenth Amendment because the state provided an adequate post-deprivation remedy); *Barnett,* 31 F.3d at 816-17 (rejecting a due process claim where the state had an adequate post-deprivation remedy); *Zimmerman v. City of Oakland,* 255 F.3d 734, 737 (9th Cir. 2001) ("[I]n certain circumstances, a state can cure what would otherwise be an unconstitutional deprivation of 'life, liberty or property' by providing adequate postdeprivation remedies."). As explained in the Court's screening order, Plaintiffs' Fourteenth Amendment due process claims were not cognizable and did not proceed. (*See* ECF No. 19.) Defendants have not provided any authority indicating that the reasoning of *Hudson* and *Barnett* applies to Fourth Amendment claims, *i.e.* that Defendants may conduct an unreasonable search and seizure so long as there is a post-deprivation process to obtain the seized property. Accordingly, the Court recommends denying summary judgment on this basis.

### 4.   Mailing Out Items

Defendants Corona and Lopez  argue that Plaintiff was not deprived of his property because he was permitted to mail the ribbon shirt, deer skin trousers, khaki duffel bag, black duffel bag, and spiritual blanket to an individual outside of DSH-Coalinga for safekeeping. (ECF No. 65-2 at 30-31.) Plaintiff argues that the items were not contraband and should be returned to him. (ECF No. 75 at 363.)

Defendants cite various cases indicating that prison inmates do not have a right to possess contraband items that are prohibited by prison property policies. *See Velasquez v. Ahlin,* 2018 WL 1959541, at *8 (E.D. Cal. Apr. 25, 2018). However, as discussed above, Defendants have not

1   established that the khaki duffel bag, black duffel bag, spiritual blanket, or batteries were

2   contraband.[16] Accordingly, the Court finds that Defendants are not entitled to summary judgment

3   on this basis.

4                               5.   Qualified Immunity

5           Defendants Corona and Lopez argue that they are entitled to qualified immunity on

6   Plaintiff's Fourth Amendment claims. (ECF No. 65-2 at 30, 33.) Plaintiff argues that Defendants

7   Corona and Lopez are not entitled to qualified immunity because they knowingly violated

8   Plaintiff's constitutional rights as well as DSH-Coalinga's internal policies. (ECF No. 75 at 331.)

9   Further, Plaintiff is suing Defendants Corona and Lopez in both their individual and official

10  capacities and requesting injunctive relief, and qualified immunity does not protect a defendant

11  from being sued in an official capacity for injunctive or declaratory relief. (*Id.* at 335.)

12          "The doctrine of qualified immunity protects government officials 'from liability for civil

13  damages insofar as their conduct does not violate clearly established statutory or constitutional

14  rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231

15  (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances

16  two important interests — the need to hold public officials accountable when they exercise power

17  irresponsibly and the need to shield officials from harassment, distraction, and liability when they

18  perform their duties reasonably." *Id.* "The protection of qualified immunity applies regardless of

19  whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based

20  on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567, (2004)

    (Kennedy, J., dissenting)).

21          In determining whether an officer is entitled to qualified immunity, the Court must decide

22  (1) whether facts alleged or shown by plaintiff make out a violation of constitutional right; and

23  (2) whether that right was clearly established at the time of the officer's alleged misconduct.

24  *Pearson,* 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In resolving these

25  issues, the Court must view the evidence in the light most favorable to plaintiff and resolve all

26

27  [16] As to the ribbon shirt and deer skin trousers, the Court has previously recommended that Defendants Corona and Lopez be granted partial summary judgment on Plaintiff's Fourth Amendment seizure claim pertaining to these items and therefore declines to further address Defendants' argument.

28

                                            22

material factual disputes in favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

Citing to *Jessop v. City of Fresno*,[17] Defendants Corona and Lopez argue that the Ninth Circuit has held that an officer, whose initial seizure of property is lawful but whose continued detention or theft of that property is unlawful, is entitled to qualified immunity. (ECF No. 65-2 at 30.)

In *Jessop,* the defendants executed a search warrant at three of the plaintiffs' properties and gave plaintiffs an inventory sheet stating that they seized approximately $50,00 from the properties, but the plaintiffs contended that the officers actually seized $151,380 in cash and another $125,000 in rare coins. 936 F.3d at 939. The Ninth Circuit considered "whether the theft of property covered by the terms of a search warrant, and seized pursuant to that warrant, violates the Fourth Amendment." *Id.* at 941. The *Jessop* court found that the defendants were entitled to qualified immunity because the plaintiffs failed to show that it was clearly established that this conduct violated the Fourth Amendment in 2013. *Id.* at 942.

Here, however, Defendants Corona and Lopez did not seize Plaintiff's personal property pursuant to a warrant. Additionally, Defendants Corona and Lopez have not established that their initial seizure of the spiritual blanket, black duffel bag, khaki duffel bag, Samsung television, and batteries was lawful. As discussed above, there is a dispute of fact regarding whether these items are contraband.

Defendants Corona and Lopez also note that "[s]ome district courts have determined, in unpublished opinions" that civil detainees do not have a reasonable expectation of privacy in their rooms and therefore it was unclear what the Constitution required. (ECF No. 65-2 at 33.) Defendants do not cite to any such opinion. (*See id.*)

As noted above, the Ninth Circuit has articulated that civil detainees are entitled to a Fourth Amendment protection from "unreasonable" search and seizure, meaning that a search is constitutional provided that it is not arbitrary, retaliatory, and is not well outside the realm of the "legitimate purpose of detention." *Hydrick,* 500 F.3d at 933; *see also Meyers,* 303 Fed.Appx. at

---

[17] Defendants' briefing cites to *Jessop v. City of Fresno,* 917 F.3d 1031 (9th Cir. 2019). (ECF No. 65-2 at 30.) However, this opinion was withdrawn and superseded by *Jessop v. City of Fresno,* 936 F.3d 937 (9th Cir. 2019).

516; *Cmty. House, Inc. v. City of Boise, Idaho,* 623 F.3d 945, 967 (9th Cir. 2010) ("To determine whether a right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act."). *Hydrick* was decided in 2007, and gave fair warning that searches of civil detainees' living areas violated the Fourth Amendment to the extent they are arbitrary, retaliatory, or exceed the legitimate purpose of detention. As such, this right was clearly established in 2018 when the search at issue occurred. *See Johnson v. Knapp,* 2009 WL 764521, at *5 (C.D. Cal. Mar. 16, 2009) (finding that a civil detainee's right to be secure against unreasonable searches and seizures was clearly established). Defendants Corona and Lopez do not address *Hydrick*.

Further, Plaintiff is seeking injunctive relief against Defendants Corona and Lopez and qualified immunity does not bar injunctive relief. *Am. Fire, Theft & Collision Managers, Inc. v. Gillespie,* 932 F.2d 816, 818 (9th Cir. 1991); *Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518, 527 (9th Cir. 1989) ("Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief."); *Malik v. Brown,* 16 F.3d 330, 335 n.4 (9th Cir. 1994) ("Claims for injunctive and declaratory relief are unaffected by qualified immunity."). Defendants Corona and Lopez do not address Plaintiff's claims for injunctive relief in their briefing.

Accordingly, Defendants Corona and Lopez have not established that they are entitled to qualified immunity for the June 2018 search.

b. First Amendment Claim

i. *Legal Standards*

"The First Amendment, applicable to the States by reason of the Fourteenth Amendment . . . prohibits government from making a law 'prohibiting the free exercise (of religion).'" *Cruz v. Beto,* 405 U.S. 319, 322 (1972) (*per curiam*) (citation omitted). Civil detainees retain the protections afforded by the First Amendment, including the right to freely practice their religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 347, 348 (1987); *see also Youngberg v. Romeo,* 457 U.S. 307, 322 (1982). In order establish a cause of action under the Free Exercise Clause, a plaintiff must show that a restriction substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith

1
2
3

without any justification reasonably related to interests concerning the care of committed persons. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008); *Freeman v. Arpaio,* 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by Shakur,* 514 F.3d at 884-85.

4
5
6
7
8
9
10
11
12
13

"'When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.' " *Shakur*, 514 F.3d at 884 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In *Turner*, the Supreme Court articulated four factors to consider in determining whether a prison regulation is valid: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the right that remain open to prison inmates"; (3) whether "accommodation of the asserted constitutional right" will "impact ... guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives." *Shakur*, 514 F.3d at 882 (citing *Turner*, 482 U.S. at 89-90).

14

    ii. *June 2018 seizure*

15
16
17

Plaintiff's claim for violation of his First Amendment right to freely exercise his religion proceeds against Defendants Corona and Lopez and arises out of the June 2018 seizure of Plaintiff's ceremonial ribbon shirt, ceremonial deer skin trousers, spiritual blanket, and black duffel bag holding the spiritual blanket. (ECF No. 19.)

18
19
20
21
22
23
24
25

Defendants Corona and Lopez move for summary judgment on the grounds that Plaintiff cannot establish that these items were mandated by his faith and the denial of these items did not place a substantial burden on Plaintiff's religious practice. (ECF No. 65-2 at 24-27.) Defendants Corona and Lopez also argue that they are entitled to qualified immunity on Plaintiff's First Amendment claims. (*Id.* at 32-33.) Plaintiff, in turn, argues that the disputed items are mandated by his faith and denial of those items placed a substantial burden on his faith. (ECF No. 75 at 336-39.) Further, Defendants Corona and Lopez are not entitled to qualified immunity because they violated DSH-Coalinga policies and because Plaintiff seeks injunctive relief. (*Id.* at 330-36.)

26
27
28

For the following reasons, the Court will recommend that Defendants Corona and Lopez be granted summary judgment on Plaintiff's First Amendment claims for the seizure of the spiritual blanket. The Court will also recommend that summary judgment be granted as to

damages for the seizure of the ribbon shirt and deer skin trousers but denied to the extent Plaintiff seeks injunctive relief. Finally, the Court will recommend that summary judgment be denied as to Plaintiff's First Amendment claim for seizure of the black duffel bag.

### iii.  *Sincere belief consistent with Plaintiff's faith*

Defendants argue that Plaintiff must first show that the seized items were "mandated" by his faith. (*See* ECF No. 65-2 at 24.) However, Defendants misstate the applicable requirement for establishing a Free Exercise Clause claim. As the Ninth Circuit has explained*,* the relevant inquiry is not whether the belief or practice is a requirement or central tenet to the plaintiff's religious doctrine. *Shakur,* 514 F.3d at 884-85. Instead, the Court looks to whether the plaintiff sincerely believes that the belief or practice is consistent with his faith. *Id.*

Plaintiff's sworn declaration submitted in support of his opposition states that he is a Native American of the Eastern Bank Tribe of Cherokees and wore his ribbon shirt and deer skin trousers during religious ceremonies. (ECF No. 75 at 5-6.) Plaintiff also submitted a copy of a notice to staff that sacred spiritual items were kept in Plaintiff's living area, and the list of sacred and blessed items[18] includes the spiritual blanket and black duffel bag.[19] (*Id.* at 150-51.) In his opposition, Plaintiff explains that he uses his spiritual blanket to perform dry sweat ceremonies. (*Id.* at 309.) Construing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff sincerely believed that the ribbon shirt, deer skin trousers, spiritual blanket, and black duffel bag were consistent with his Native American faith. *See Consol. Elec. Co. v. U.S. for Use & Benefit of Gough Indus., Inc.,* 355 F.2d 437, 438 (9th Cir. 1966) ("When an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment.").

### iv.  *Burden on the practice of Plaintiff's religion*

Defendants argue that, under the *Turner* factors, denial of the ribbon shirt, deer skin

---

[18] The list of sacred items does not include the ribbon shirt or deer skin trousers.

[19] As noted above, the Court's screening order found that Plaintiff sufficiently stated a claim against Defendants Corona and Lopez for violation of Plaintiff's First Amendment right to freely exercise religion based on the seizure of "Plaintiff's spiritual property of a ceremonial ribbon shirt, ceremonial deer skin trousers, a spiritual blanket, and the black duffel bag that holds the spiritual blanket." (ECF No. 19 at 17.) However, Defendants do not mention the black duffel bag when arguing that Plaintiff cannot establish that the seized items were mandated by his faith. (*See* ECF No. 62 at 24.)

26

trousers, spiritual blanket, and black duffel bag did not substantially burden the practice of Plaintiff's Native American faith. (ECF No. 65-2 at 24-27.) Plaintiff, in turn, argues that he had permission from his treatment team to possess the ribbon shirt and deer skin trousers, the spiritual blanket was won in a prior appeal, and the black duffel bag was used to transport the spiritual blanket and was not contraband.  (ECF No. 75 at 243, 345, 354, 357.) Having these items, confiscated, destroyed, and mishandled has caused Plaintiff extreme stress. (*Id.* at 339.) Additionally, Plaintiff is unable to participate in his services and ceremonies given the COVID-19 pandemic. (*Id.*) The only thing Plaintiff can do is use his spiritual blanket to dry sweat for cleansing and to be in tune with the spirits when he is feeling ill or out of tune with the spirits and nature. (*Id.*)

As noted above, the four *Turner* factors are to be balanced when determining whether a regulation that impinges on a civil detainee's First Amendment rights is reasonably related to legitimate penological interests and therefore valid. Defendants argue that the *Turner* factors apply because the ribbon shirt, deer skin trousers, duffel bag, and spiritual blanket were not permitted under DSH-Coalinga's policies governing religious/spiritual items. (ECF No. 65-2 at 24.) *See, e.g., Herrick v. Strong,* 745 Fed.Appx. 287, 288-89 (9th Cir. 2018) (finding that the district court appropriately applied *Turner* in granting summary judgment to civil detainee's First Amendment claims regarding personal mail); *Kindred v. Allenby,* 2019 WL 4013463, at *2-3 (E.D. Cal. Aug. 26, 2019) (applying *Turner* factors on summary judgment to civil detainee's First Amendment free exercise claim arising out of denial of materials pursuant to institutional policies); *Younger v. County of San Bernadino,* 2018 WL 3219654, at *11-12 (C.D. Cal. Jan. 30, 2018) (applying *Turner* factors on summary judgment to pretrial detainee's First Amendment free exercise claim).

The first *Turner* factor requires a determination of whether there is a legitimate penological interest that is rationally related to the regulation at issue. There is no genuine dispute that AD 642 permits DSH-Coalinga to restrict religious/spiritual items in light of the safety or security needs of the hospital or potential as contraband.[20] (UMF No. 34, ECF Nos. 65-3 at 5, 75

---

[20]Plaintiff states that he disputes this fact because "this allegation needs to be proven. Not just alleged . . ." (ECF No. 75 at 355.) However, both parties submit copies of AD 640, governing hospital religious practices. (*See* Price Decl., Ex. 4, ECF No. 65-7 at 7-12; *see also* ECF No. 75 at 144-49.) Under AD 640, "[f]reedom of religious belief and

at 355.) Defendants Corona and Lopez argue that non-state issued clothing such as the ribbon shirt and deer skin trousers poses a security risk, including escape, and a large comforter cannot be properly laundered or stored, which creates health and safety risks. (ECF No. 65-2 at 24-25.) Plaintiff does not dispute whether DSH-Coalinga's interests are legitimate, but argues that his treatment team approved his possession of the ribbon shirt and deer skin trousers and he won the right to have the spiritual blanket in a prior appeal. (ECF No. 75 at 243, 345, 354, 357.) As discussed above, the documents Plaintiff relies on for this purported permission do not support Plaintiff's statement. Plaintiff also does not submit any evidence in support of his contention that he had permission to have the spiritual blanket due to a prior appeal.

The Court finds that there is a rational nexus between prohibiting Plaintiff from possessing his spiritual blanket and DSH-Coalinga's legitimate health concerns. Defendants submit a sworn declaration from Defendant Price stating that DSH-Coalinga lacks the laundry facilities to clean large quilts or comforters and they therefore present a health concern. (UMF No. 44, ECF No. 65-3 at 6; Price Decl., ECF No. 65-6 at 3.) Plaintiff does not offer any evidence to rebut Defendant Price's declaration. Further, Plaintiff states that he uses the spiritual blanket for dry sweat ceremonies. (ECF No. 75 at 309, 339.) Prohibiting Plaintiff from possessing a large blanket that cannot be laundered has a logical connection to furthering institutional health concerns. Therefore, the first *Turner* factor weighs in favor of Defendants as to the spiritual blanket.

However, Defendants do not point to any evidence regarding DHS-Coalinga's reasons for prohibiting non-state issued clothing. (*See* ECF No. 65-2 at 24-25.) As discussed above, it is undisputed that the ribbon shirt and deer skin trousers were contraband. However, the first *Turner* factor looks to the reasons for the policies and not whether the items were or were not prohibited under those policies. Defendants Corona and Lopez must establish not just that the items were

practice do not extend to activities that jeopardize the security of the hospital" and "[r]eligious activities may be modified in order to reduce risk to the health or safety of staff or patients." (ECF Nos. 65-7 at 8, 75 at 145.) Further, patients are allowed to purchase religious materials/items as approved by AD 640 and 642 and with permission from their treatment team. (ECF Nos. 65-7 at 11, 75 at 148.) The parties also both submit copies of AD 642 governing religious/spiritual items, which provides that the quantity and/or size of religious items may be restricted based on the safety and security needs of the hospital or potential as contraband. (Price Decl., Ex. 5, ECF No. 65-7 at 14, 75 at 153.) Therefore, both parties have submitted evidence that DSH-Coalinga policy expressly permits religious items to be modified in order to reduce the risk of health or safety to staff or patients. Plaintiff does not submit any evidence rebutting this policy, and therefore there is no genuine dispute as to this fact.

contraband, but that there were legitimate penological interests for classifying the items as contraband. Here, the Statewide Contraband List does not explain why non-state issued clothing is contraband, and Defendants do not submit any sworn declarations or other evidence regarding DSH-Coalinga's reasons for prohibiting these items. Defendants also do not point to any evidence or present any arguments regarding an interest in prohibiting the black duffel bag. As the parties moving for summary judgment, Defendants Corona and Lopez have the burden of production for their contention that there is a legitimate state interest in prohibiting Plaintiff from possessing the items that were confiscated. Defendants have not met their burden as to the ribbon shirt, deer skin trousers, or black duffel bag.

The second *Turner* factor considers whether Plaintiff has a valid means of exercising his constitutional rights. Defendants Corona and Lopez contend that DSH-Coalinga maintains a Department of Pastoral Services, which provides authorized religious activities, patient religious counseling, and management of the "all-faiths" chapels and other areas utilized or designated for religious uses. (ECF No. 65-2 at 25.) Through Pastoral Services, DSH-Coalinga provides patients a Native American spiritual advisor. (*Id.*) Plaintiff attends a Native American prayer circle with 20-25 other patients and has received spiritual guidance from the Native American spiritual advisor provided by DSH-Coalinga. (*Id.*) Plaintiff wears a Native American medicine bag, which contains items of religious and spiritual significance to him, and wears a beaded, bone choker containing small medicine bags. (*Id.*) As evidence, Defendants submit a copy of AD 640, which outlines the duties and functions of the Department of Pastoral Services, as well as Plaintiff's deposition testimony regarding his spiritual advisor, prayer circle, medicine bag, and bone choker. (Price Decl. at Ex. 4, ECF No. 65-7 at 8-9; Day Decl. at Ex. 10, ECF No. 65-5 at 40-51.)

Plaintiff does not dispute that he has sought spiritual guidance from a spiritual advisor provided by DSH-Coalinga, wears a medicine bag containing items of religious and spiritual significance, and wears a bone choker, although he clarifies that the bone choker is primarily for ceremonies. (ECF No. 75 at 357.) However, Plaintiff argues that Pastoral Services are not currently being provided, there is no spiritual leader access, and the prayer circle has not been running since 2019 because of a modification of program due to the COVID-19 pandemic. (ECF No. 75 at 354, 357.)

The second *Turner* factor considers whether the plaintiff "has 'alternative means by which he can practice his religion' or is 'denied all means of religious expression.'" *Shakur,* 514 F.3d at 886 (quoting *Ward v. Walsh,* 1 F.3d 873, 877 (9th Cir. 1993)) (finding that a civil detainee had "numerous other means of practicing his religion" where he could keep a copy of the Qur'an in his cell, along with a prayer rug and up to seven religious items provided they did not pose a threat to the safe, secure, and orderly operation of the institution). Plaintiff concedes that he has received spiritual guidance from a spiritual advisor while a patient at DSH-Coalinga and continues to be able to wear his medicine bag and bone choker. Although he argues that some group religious services have not occurred since 2019 due to the COVID-19 pandemic, those restrictions were implemented more than a year after the June 2018 search occurred. Plaintiff has not been denied all means of religious expression even though some group services have been suspended. *See Chau v. Young,* 2014 WL 4100635, at *5 (N.D. Cal. Aug. 20, 2014) ("The denial of access to group religious services did not deprive Chau of all means of exercising his religious beliefs. Chau remained able to worship alone in his cell and had access, upon request, to an Islamic services to discuss spiritual matters."). There is no genuine dispute that Plaintiff had other means of practicing his religion without the use of the ribbon shirt, deer skin trousers, spiritual blanket, and black duffel bag. The Court therefore finds that the second *Turner* factor weighs in favor of Defendants.

The third *Turner* factor considers the impact accommodation would have on staff and other patients, as well as the allocation of institutional resources generally. Defendants Corona and Lopez argue that accommodation would have a "ripple effect," running a secure facility "is an inordinately difficult task," and civil detainees such as Plaintiff are subject to restrictions that are not excessive and have a legitimate, non-punitive governmental purpose. (ECF No. 65-2 at 25-26.) While the Court recognizes the substantial undertaking involved in running a secure facility, Defendants do not explain how, if at all, allowing Plaintiff to possess the ribbon shirt, deer skin trousers, spiritual blanket, and black duffel bag would affect these concerns or create a "ripple effect." The Court gives deference to the institution's assessment of the burden on operations, but it cannot accept Defendants' conclusion that accommodation would be disruptive without specific support for that argument. *See Shakur,* 514 F.3d at 887 (finding that the third

*Turner* factor did not weigh in defendants favor where there were no detailed findings in the record to support defendants' assertions).

Defendants Corona and Lopez also argue that all of the seized items were contraband and DSH-Coalinga has a reasonable interest in restricting Plaintiff's access to certain property that may become a health risk or cause a security risk. As discussed above, Defendants have only established that the spiritual blanket may create a health risk and that the ribbon shirt and deer skin trousers were contraband. (*See* ECF No. 65-2 at 26.) Further, the third *Turner* factor looks to the impact on staff, other patients, and hospital resources, not on the reasonableness of DSH-Coalinga's interests or whether possession of the items violated internal policies. Thus, the Court finds that the third *Turner* factor does not weigh in Defendants' favor.

Finally, as to the fourth *Turner* factor, the Court considers whether there are obvious, easy alternatives indicating that the institution's response is exaggerated. Defendants argue that Plaintiff cannot produce evidence disproving the validity of DSH-Coalinga's interests in health, safety, and security concerns underlying their contraband lists and Administrative Directives. (ECF No. 65-2 at 26.) As discussed above, the Court has found that, under the first *Turner* factor, there is a rational nexus between prohibiting Plaintiff from possessing his spiritual blanket and DSH-Coalinga's legitimate health concerns, but Defendants have failed to meet their burden of establishing that DSH-Coalinga had a legitimate interest in prohibiting Plaintiff from possessing the ribbon shirt, deer skin trousers, and black duffel bag. As to the spiritual blanket, Plaintiff's opposition does not identify what alternatives, if any, exist to prohibiting him from possessing this item. (*See* ECF No. 75.) Here, Plaintiff has the burden of showing that there are obvious, easy alternatives to DSH-Coalinga's restrictions on what religious items he was allowed to possess. *O'Lone,* 482 U.S. at 350; *Mauro v. Arpaio*, 188 F.3d 1054, 1063 (9th Cir. 1999). Because Plaintiff has not met this burden and has not identified any obvious, easy alternatives, the fourth *Turner* factor weighs in favor of Defendants.

Accordingly, construing the evidence in the light most favorable to Plaintiff, the Court finds that the first, second, and fourth *Turner* factors weigh in favor of Defendants Corona and Lopez as to the spiritual blanket. However, the Court cannot find that the *Turner* factors weigh in Defendants' favor with respect to the remaining items. Thus, the Court recommends granting

1   summary judgment in favor of Defendants Corona and Lopez on Plaintiff's First Amendment

2   claim arising out of the seizure of the spiritual blanket.

3                               *v.   Qualified Immunity*

4           Defendants Corona and Lopez argue that they are entitled to qualified immunity on

5   Plaintiff's First Amendment claims because DSH-Coalinga policies define contraband and what

6   religious/spiritual items are permitted. DSH-Coalinga staff are legally prohibited from

7   "knowingly and willfully" violating hospital rules and regulations, and Defendants could not

8   reasonably have recognized that adherence to these policies would violate Plaintiff's

9   constitutional rights. (ECF No. 65-2 at 32.) According to Defendants Corona and Lopez, "[t]he

10  contours of the First Amendment are uncertain as there is no right to possess non-state issued

11  clothing or to possess a large comforter that is not sacred or religious at a civil detention facility."

12  (ECF No. 65-2.) Plaintiff, in turn, argues that Defendants are not entitled to qualified immunity

13  because they violated hospital policies as well as the constitution, and Plaintiff is seeking

14  injunctive relief against Defendants Corona and Lopez in their official capacity. (ECF No. 75 at

    330-36.)

15          Because there is a dispute of fact whether, under the *Turner* factors, seizure of the ribbon

16  shirt, deer skin trousers, and black duffel bag[21] violated a Plaintiff's First Amendment rights as

17  discussed above, the Court turns to the second prong of the qualified immunity analysis, *i.e.*

18  whether the constitutional right was clearly established at the time of the June 2018 search.

19          The Supreme Court has recognized that prisoners "retain protections afforded by the First

20  Amendment," including the free exercise of religion, *O'Lone,* 482 U.S. at 348, and civil detainees

21  are entitled to more considerate treatment and conditions of confinement than prisoners,

22  *Youngberg*, 457 U.S. at 322. These principles were clearly established prior to the June 2018

23  search. However, the Court has not located, and Plaintiff has not identified, any controlling law in

24  place in June 2018 that held that seizure of a civil detainee's religious property that is contraband

25  under institutional policies constituted a violation of the Free Exercise Clause.

26  _____

27  [21] Because the Court has found that Defendants Corona and Lopez are entitled to summary judgment on Plaintiff's
    First Amendment claim regarding the seizure of the spiritual blanket, it declines to consider whether Defendants are
    entitled to qualified immunity as to this item.

28

As to the ribbon shirt and deer skin trousers, there is no genuine dispute of fact that these items were contraband when seized and Plaintiff has not submitted any evidence that he had special permission to have these items. Plaintiff also does not argue or submit any evidence establishing that he specifically informed Defendants Corona and Lopez of these items' religious significance. Additionally, the ribbon shirt and deer skin trousers are not identified as spiritual items on the notice that was posted on Plaintiff's door. (*See* ECF No. 75 at 150-52.) Even assuming Defendants Corona and Lopez knew the ribbon shirt and deer skin trousers were Native American items when they confiscated them, "there is no law indicating that knowledge that personal property may have religious significance precludes a correctional officer from confiscating property if the property is contraband under general prison regulations, the prisoner had not obtained special permission to possess the property, and the prisoner had not informed the officer of the precise religious significance of the property." *Abel v. Martel*, 2013 WL 552416, at *5 (E.D. Cal. Feb. 13, 2013).[22] Any liability that Defendants Corona and Lopez may have for confiscating Plaintiff's ribbon shirt and deer skin trousers would not be based on a clearly established constitutional right because it would not have been clear to a reasonable staff member that a violation of Plaintiff's First Amendment rights was occurring when these items were seized.

However, Plaintiff is seeking injunctive relief against Defendants Corona and Lopez in their official capacity and, as noted above, qualified immunity does not apply to injunctive relief. Defendants Corona and Lopez do not address Plaintiff's claims for injunctive relief in their motion. (*See* ECF No. 65.) Accordingly, the Court finds that Defendants Corona and Lopez are not entitled to qualified immunity to the extent Plaintiff seeks injunctive relief for his Free Exercise Clause claim arising out of the seizure of his ribbon shirt and deer skin trousers. Therefore, the Court will recommend that summary judgment be granted only as to Plaintiff's First Amendment claim for damages for seizure of the ribbon shirt and deer skin trousers.

---

[22] Enforcing a prison rule or regulation would not always provide a basis for qualified immunity. *Abel,* 2013 WL 552416, at *5 n.8. If a reasonable staff member would know that the regulation enforced violated clearly established federal law, enforcement could still subject the officer to liability. *See, e.g., California Att'ys for Crim. Just. v. Butts,* 195 F.3d 1039, 1048 (9th Cir. 1999), *as amended on denial of reh'g and reh'g en banc* (Jan. 8, 2000), and *abrogated by Chavez v. Martinez,* 538 U.S. 760 (2003) (holding that reliance on training materials was not a basis for granting qualified immunity when materials conflicted with the commands of *Miranda*).

Finally, as discussed further above, Defendants have failed to establish as a matter of law that DSH-Coalinga's contraband policies prohibited Plaintiff from possessing the black duffel bag. AD 640 and 642, which govern religious practices and religious/spiritual items at DSH-Coalinga, also do not specifically prohibit duffel bags. *See* (Price Decl., Exhs. 4-5, ECF No. 65-7 at 7-19; ECF No. 75 at 144-49, 153-58.) Plaintiff has also submitted a copy of the notice posted on his door at the time of the June 2018 search, signed by Plaintiff and the Unit Supervisor, listing the black duffel bag as a spiritual item. (ECF No. 75 at 150-52.) There is thus a dispute of fact regarding whether the black duffel bag was prohibited under DSH-Coalinga policies. If Plaintiff's evidence is construed in his favor, as it must be for purposes of summary judgment, a reasonable fact-finder could find that Defendants Corona and Lopez could not have reasonably believed that confiscating Plaintiff's black duffel bag was lawful. The Court therefore finds that Defendants Corona and Lopez are not entitled to qualified immunity for Plaintiff's Free Exercise Clause claim regarding the black duffel bag.

## VI.   CONCLUSION AND RECOMMENDATIONS

Accordingly, for the reasons discussed above, IT IS HEREBY RECOMMENDED[23] that:

1.  Defendants' motion for summary judgment (ECF No. 65) be granted in part and denied in part;

2.  Summary judgment be granted in favor of Defendants on the following:

    a.  Plaintiff's Fourth Amendment claim against Defendant Price for the January 2018 search;

    b.  Plaintiff's Fourth Amendment claim against Defendants Corona and Lopez for the June 2018 seizure of the ribbon shirt and deer skin trousers;

---

[23] Federal Rule of Civil Procedure 54(b) provides that "[w]hen an action presents more than one claim for relief ... or multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court determines that there is no just reason for delay." This determination "left to the sound judicial discretion of the district court" but such discretion should be exercised "in the interest of sound judicial administration" and in light of the "historic federal policy against piecemeal appeals." *Id.* In determining whether to direct entry of a final judgment as to fewer than all parties, courts should consider "whether the certified order is sufficiently divisible from the other claims such that the case would not inevitably come back to this court on the same set of facts." *Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 628 (9th Cir. 2015) (internal citations omitted). Here, Defendants do not request entry of a separate final judgment. Additionally, the claims that remain are based on the same set of facts as those for which summary judgment is granted. A final judgment would not be divisible from the other claims in the case, would lead to piecemeal judgments, and any appeal of a later judgment would involve the same set of facts. Therefore, the Court does not recommend entry of a separate final judgment at this time.

c.  Plaintiff's First Amendment claim against Defendants Corona and Lopez for seizure of the spiritual blanket;

d.  Plaintiff's First Amendment claim against Defendants Corona and Lopez for damages from the seizure of the ribbon shirt and deer skin trousers;

3.  Summary judgment be denied as to the following:

a.  Plaintiff's Fourth Amendment claim against Defendants Corona and Lopez for the June 2018 search;

b.  Plaintiff's Fourth Amendment claims against Defendants Corona and Lopez for the June 2018 seizure of Plaintiff's black duffel bag, khaki duffel bag, spiritual blanket, and batteries;

c.  Plaintiff's First Amendment claim against Defendants Corona and Lopez for seizure of the black duffel bag; and

d.  Plaintiff's First Amendment claim against Defendants Corona and Lopez for injunctive relief arising out of the seizure of the ribbon shirt and deer skin trousers.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 14, 2021**                          /s/ *Erica P. Grosjean*

UNITED STATES MAGISTRATE JUDGE